**NEW YORK INSTITUTE OF TECHNOLOGY, Plaintiff,**

v.

**BIOSOUND, INC. and Andersen Group, Inc., Defendants.**

**No. 85 CIV 4326 (LBS).**

United States District Court, S.D.New York.

April 22, 1987.

Weil, Gotshal & Manges, New York City (Kevin Hughes, of counsel), for plaintiff.

Leventritt, Lewittes & Bender, Garden City, N.Y., Sidney Bender, Janine Bender, for defendants.

SAND, District Judge.

This complex litigation arises from a dispute over intellectual property. Presently pending before the Court is plaintiff's motion to disqualify one of the attorneys serving as defendants' patent counsel.

### Background

In 1977, the plaintiff, New York Institute of Technology ("NYIT"), entered into a Research and Development and License Agreement ("Agreement") with Boehringer Mannheim GmbH ("Boehringer"), the predecessor in interest of defendant Biosound, Inc. ("Biosound").[1] Pursuant to the Agreement, Boehringer obtained an exclu-

sive worldwide license "to utilize, practice, commercialize and exploit" what the Agreement defines as the "NYIT Process" for ultrasonic body scanning. Agreement § 7.01. While the definition of the "NYIT Process" encompasses techniques and features whether patented or unpatentable, the Agreement states that certain elements of the NYIT Process were disclosed in a United States patent which NYIT owned, as well as in certain patent applications designated in Schedule A of the Agreement. *See* Agreement § 1.04.

NYIT, as the licensor, was obligated under the Agreement, if Boehringer so requested, to prosecute the designated patent applications to issuance. In addition, the Agreement provides that "NYIT shall keep Boehringer informed as to the filing and prosecution" of the designated items. Agreement § 7.07(b). Specifically, the contract states that "NYIT's patent counsel shall forward copies of all proposed patent applications and patent office actions to Boehringer's patent counsel and will consult with Boehringer's patent counsel as to the form of such patent applications and responses to such patent office action." Agreement § 7.07(b).

It appears that the patent applications listed in Schedule A of the Agreement were prosecuted to issuance. The record of the course of conduct between the parties reflects that there was indeed consultation between Martin Novack, Esq., the patent attorney who represented NYIT in the patent prosecution, and James M. Durlacher, the attorney who represented the licensee. Although Mr. Durlacher testified in a court-ordered deposition that he performed merely "administrative" tasks in connection with the prosecution of the patents, *see* Transcript of Deposition of James M. Durlacher ("Durlacher Transcript") at 115, the record indicates that Durlacher's role was more substantive. *See, e.g.,* Durlacher Transcript at 66–70, 90–95.

---

1. It appears that in 1982, Boehringer, through a subsidiary, assigned all right, title and interest in the Agreement to defendant Biosound. *See* Complaint ¶ 16. Plaintiff alleges, and the defendants admit, that defendant Andersen Group, Inc. has undertaken to guarantee Biosound's performance of its obligations under the Agreement. *See* Complaint ¶ 17; *see also* Amended Answer—"Second Defense."

After NYIT and Boehringer entered into the Agreement, two of the patents allegedly included within the rubric of the licensed NYIT Process were challenged in a Florida federal court action (the "HRL Litigation"). NYIT and defendant Biosound had a mutual interest in that litigation—to uphold the validity of the challenged patents. Accordingly, both attorney Durlacher—on behalf of the licensee—and attorney Novack—on behalf of the patentee—participated in the proceedings in defense of the patents. Ultimately, the patents at issue in the HRL Litigation were declared invalid. At some point and for reasons which are disputed, Biosound decided to reevaluate its royalty arrangement with NYIT. Thereafter, Biosound reduced the royalty payments and the present action ensued.

The suit was commenced as a contract action but, with the filing of an Amended Answer and counterclaims, was re-cast as a contract/patent action. Claiming, *inter alia*, that Biosound's withholding of royalties constitutes a wilful breach of contract, NYIT seeks consequential and punitive damages. In response, defendant Biosound asserts that it had a legally sound basis for reducing royalty payments owing under the Agreement. Furthermore, the defendants contend that five patents which are intimately related to the royalty obligations are invalid.

Enmeshed in the thicket of this dispute is the controversy over the role of Mr. Durlacher, who now serves as patent co-counsel to the defendants and who, at all relevant times, represented the defendants in connection with the licensing arrangement with NYIT. Plaintiff's motion to disqualify Durlacher is based on two theories. First, NYIT claims that the challenged attorney's representation of the defendants in this action creates an impermissible appearance of impropriety. Second, plaintiff argues that Durlacher must be disqualified because of his potential role as a witness at the trial. We highlight, as we did in a previous order entered with respect to the motion, that "there is no claim that Durlacher's representation of the defendants implicates Canon 4 of The American Bar Association Code of Professional Responsibility. There is no claim that disqualification is needed to preserve client confidences." Order, 85 Civ. 4326 (Jan. 27, 1987) [Available on WESTLAW, DCT database].

*Discussion*

**I. The Alleged "Appearance of Impropriety"**

Canon 9, on which NYIT relies, provides that "[a] lawyer should avoid even the appearance of impropriety." The Second Circuit has cautioned, however, that in approaching disqualification motions grounded on Canon 9, courts should take a "restrained" view. *Armstrong v. McAlpin*, 625 F.2d 433, 446 (2d Cir.1980) (en banc), *vacated on other grounds and remanded*, 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981). Indeed, only in "unusual situations" is "the 'appearance of impropriety' alone ... sufficient to warrant disqualification." *Id.* In the absence of "a threat of taint to the trial, ... possible ethical conflicts surfacing during a litigation are generally better addressed by the 'comprehensive disciplinary machinery' of the state and federal bar...." *Id.* quoting from *Bd. of Ed. of N.Y. City v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir.1979).

Recognizing the force of this case law, NYIT argues that this *is* the unusual case which calls for disqualification on the basis of an appearance of impropriety. *See* Memorandum of Law in Support of Plaintiff's Motion to Disqualify Defendants' Counsel at 9. Factually, what underlies this argument is plaintiff's claim that Durlacher "actively participated in the prosecution of the patents which the defendants now seek to have invalidated." *Id.* at 1. In addition, plaintiff cites the role Durlacher played in the defense of the patents at issue in the HRL Litigation (which are not the same as those at issue here) as a factor which "add[s] to the appearance of impropriety." *Id.* at 12 n. 1. NYIT contends that because Durlacher is in the "unseemly" position of attacking the validity of patents he helped prosecute and defend, he

should be disqualified on ethical grounds. *Id.* at 1.

■ We do not agree that the alleged appearance of impropriety in this case presents the "unusual" situation in which disqualification on Canon 9 grounds alone is warranted. At all times, Durlacher represented the interests of the licensee under the Agreement. This is not a case in which an attorney has represented one client and then switched over to his former client's adversary.

It is not at all unforeseeable that a licensee may end up in litigation with a patentee with whom the licensee has a royalty arrangement. "Licensees may often be the only individuals with enough economic incentive to challenge the patentability of an inventor's discovery." *Lear, Inc. v. Adkins,* 395 U.S. 653, 670, 89 S.Ct. 1902, 1911, 23 L.Ed.2d 610 (1969). Given the inherent tension in the licensor-licensee relationship, the situation presented here is not one which warrants disqualification solely on the basis of an appearance of impropriety. Under the facts of this case, public confidence in the integrity of the system is not undermined by Durlacher's continuation as patent co-counsel for the defendants. *Cf. Woods v. Covington County Bank,* 537 F.2d 804, 813 (5th Cir.1976) (Rationale underlying Canon 9 is that "some conduct which is in fact ethical may appear to the layman as unethical and thereby could erode public confidence in the judicial system or the legal profession.").

The principal case on which plaintiff relies in support of its motion to disqualify on appearance of impropriety grounds, *Sun Studs, Inc. v. Applied Theory Associates, Inc.,* 772 F.2d 1557 (Fed.Cir.1985), does not lead us to a different conclusion. In *Sun Studs,* the Federal Circuit, applying Ninth Circuit law, upheld the district court's disqualification of defendant's counsel in a patent infringement action. The challenged firm had prosecuted to issuance one of the patents-in-suit. Although the defendant argued that the challenged firm had acted in the prosecution as an attorney

for the inventor and not for the moving party, the Court observed that the inventor "had no independent right to inventions or to prosecute patent applications which he acknowledged were equitably owned by [plaintiff] Sun Studs." *Id.* at 1567. The attorney who had prosecuted the patent for the benefit of the plaintiff was thus disqualified from representing the defendant.

While we noted earlier that Durlacher's role in connection with the patent prosecution was more than "administrative," he did not prosecute the patents-in-suit to issuance. It was NYIT's patent counsel, Martin Novack, who prosecuted the patent applications. Control of the prosecution, it appears, rested with Novack and his client, the plaintiff. Furthermore, whatever role Durlacher played in connection with the prosecution was clearly for the benefit of his client, the licensee.

In this regard, *Levin v. Ripple Twist Mills, Inc.,* 416 F.Supp. 876 (E.D.Pa.1976), is instructive. The plaintiff in *Ripple Twist,* who held a patent on a knitting machine, sued his licensee's successor for patent infringement and breach of contract. Plaintiff Levin moved to disqualify Edelson and Udell, defendant's counsel, on the ground that they had represented him in the prosecution of the patents. The court, in denying plaintiff's motion, focused on the fact that the challenged attorneys had represented primarily the original licensee in the patent prosecution. It was the original licensee, Newman, who had the right to prosecute the patent application in Levin's name. As the court observed:

During the relevant time period, Newman, the defendant's predecessor, always was Edelson/Udell's primary client. Edelson/Udell acted as counsel of record on the patent application only so long as it was in Newman's interest, and it always should have been clear to Levin that to the extent he then was Edelson/Udell's client, he was their secondary client in this matter, and that Levin might at some future time be litigating against their primary client.

*Id.* at 885. That point occurred when a dispute erupted over the licensee's royalty obligations under the agreement.

The situation at bar is similar in certain important respects to *Ripple Twist.* At all relevant times, Durlacher represented Biosound, or its predecessor, in connection with the transactions with NYIT. As we indicated, it was foreseeable that the licensor and licensee would end up in litigation over the licensed technology and know-how. In addition, any appearance of impropriety is lessened by the fact that Durlacher did not undertake successive representation of clients with adverse interests. Moreover, because Durlacher himself did not prosecute the patents-in-suit to issuance, this case presents perhaps less justification for disqualification than *Ripple Twist,* in which the challenged attorney prosecuted the patent at issue. By contrast and by way of example, had NYIT's attorney, who prosecuted the patents-in-suit, sought to represent the defendants in an attack on the validity of those patents, the ethical problem would be more acute.

## II. *Durlacher as a Witness*

The second basis on which NYIT seeks Durlacher's disqualification centers on his possible role as a witness at the trial. *See* DR 5–101(B) and DR 5–102(A). It is the Court's understanding that discovery in this case is continuing with regard to the claims asserted in the Complaint as well as the counterclaims asserted in the Amended Answer. At the conclusion of discovery, a pre-trial order which defines and narrows the issues for trial will be submitted.

■ On this record and at this stage in the litigation, it is not clear whether NYIT has sustained its burden under either DR 5–101(B) or DR 5–102(A). The Court therefore defers decision on this matter pending the completion of discovery and the filing of a pretrial order. The parties are directed to proceed expeditiously. Together with the submission of the pre-trial order, the parties may, if they wish, submit further briefing on the disqualification issue, which the Court will then take on submission.

SO ORDERED.