**TELECTRONICS PROPRIETARY, LTD., Plaintiff–Appellee,**

v.

**MEDTRONIC, INC., Defendant–Appellant,**

v.

**TELECTRONICS, INC., and Telectronics USA, Additional Defendants on Counterclaim–Appellees.**

No. 87–1364.

United States Court of Appeals, Federal Circuit.

Jan. 6, 1988.

Allen I. Rubenstein, Gottlieb, Rackman & Reisman, P.C., New York City, argued for plaintiff-appellee. With him on the brief was Michael I. Rackman. Also on the brief was William C. Nealon, Suffield, Conn.

Grady J. Frenchick, Medtronic, Inc., of Minneapolis, Minn., argued for defendant-appellant. With him on the brief was Robert C. Beck.

Before SMITH, Circuit Judge, BALDWIN, Senior Circuit Judge, and BISSELL, Circuit Judge.

BISSELL, Circuit Judge.

This court accepted an interlocutory appeal of an order, dated September 8, 1986, 83 Civ. No. 8568–Leisure [hereinafter September 8 Order], from the District Court for the Southern District of New York. The district court stated the controlling question of law as:

Whether, consistent with the Code of Professional Responsibility of the American Bar Association or the Model Rules of Professional Conduct, a patent attorney can work with a corporate inventor to draft or prosecute a patent application to issuance of a patent and subsequently, despite the objection of both the corporate inventor and a later assignee of the patent, represent interests seeking to invalidate or narrowly construe the selfsame patent.

*Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 83 Civ. No. 8568–Leisure (S.D.N.Y. Jan. 7, 1987) (order granting Request for Certification of September 8 Order) [hereinafter Certification Order]. The motion of Medtronic, Inc. to disqualify William C. Nealon and Michael I. Rackman and his law firm, Gottlieb, Rackman & Reisman, as counsel for Telectronics Proprietary, Ltd., Telectronics, Inc., and Telectronics U.S.A., Inc. (collectively "Telectronics"), was denied with qualification in the September 8 Order. In the context of the facts of this case, we affirm the September 8 Order.

## BACKGROUND

This dispute began in August 1983 with an International Trade Commission (ITC) investigation denominated *In re Certain Cardiac Pacemakers and Components Thereof,* Inv. No. 337–TA–162 [hereinafter Cardiac Pacemakers]. Medtronic sought relief under 19 U.S.C. § 1337 (Supp. III 1985) for alleged infringement by Telectronics of Medtronic's four patents—United States Letters Patent Nos. 3,648,707 ('707), 4,059,116 ('116), 4,312,355 ('355), and 3,595,-242 ('242).

In November 1983, Telectronics filed this declaratory judgment action seeking a declaration of patent invalidity, unenforceability, and noninfringement with respect to the '707, '116, and '355 patents. Medtronic counterclaimed for infringement of these three patents and the '242 patent, and sought a declaration that the four patents were valid, infringed and enforceable. Be-

cause Medtronic put the '242 patent at issue, Telectronics filed a First Amended and Supplemental Complaint requesting that all four patents be declared invalid and unenforceable, and that Telectronics be declared not to have infringed the patents.

Medtronic moved to disqualify counsel. It argued that Nealon and Rackman had served as in-house and outside counsel respectively, for American Optical Corporation (AO), the original patent holder, and that they had participated in the prosecution of the '242 patent for AO. Medtronic urged that it was improper for Nealon and Rackman, now attorneys for Telectronics, to challenge the validity of the '242 patent.

Medtronic claimed the status of "former client" for itself, as assignee of the '242 patent. It also claimed this for its employee, Barouh V. Berkovits, the inventor of the '242 patent, who was employed by AO when the patent was prosecuted. On this basis, Medtronic contended that representation of Telectronics by Rackman and Nealon was contrary to the ethical requirements of Canons 4, 5, 7, and 9 of the Code of Professional Responsibility of the American Bar Association (ABA). Telectronics opposed the disqualification motion on the grounds of: (1) *res judicata* because of the denial of a similar motion in a related case before the ITC, (2) laches, and (3) the absence of conflict between representation by Rackman and Nealon and the ABA Code of Professional Responsibility.

Without reaching the issues of *res judicata* and laches, the district court in the September 8 Order denied Medtronic's motion to disqualify counsel conditioned on Telectronics' not raising an issue of fraud or misconduct regarding the prosecution of the '242 patent, and restricting its proof of obviousness to art discovered after the issuance of the patent. On January 7, 1987, the district court granted Medtronic's Request for Certification of the September 8 Order, and granted it permission to petition this court to accept an appeal of the September 8 Order. We accepted the appeal on May 22, 1987.

## The '242 Patent

### The Inventor

Berkovits, while an employee and director of research and development of AO, invented a cardiac pacemaker relating to dual chamber cardiac pacing. On March 4, 1969, Berkovits assigned to AO his entire interest in the invention. A patent application was filed which issued on July 27, 1971, as the '242 patent. Berkovits, on terminating his employment with AO in 1975, assumed his current employment with Medtronic.

### Ownership and Licensing

Medtronic is the current owner of the '242 patent; Telectronics is a current licensee. The history of the ownership, licensing, and successive assignments of the '242 patent, although complex, is most pertinent to the issue under review.

Telectronics acquired its license to make, use, and sell products covered by the '242 patent as follows. In 1973, AO granted to N.V. Philips Gloeilampenfabrieken (Philips) a nonexclusive license under the '242 patent for pacer devices. In 1976, the parties amended the agreement such that AO granted Philips a paid-up license for external pacer devices, but Philips would continue royalty payments to AO on the implantable pacer devices. In 1981, Philips transferred its '242 patent license rights to a joint venture with Honeywell, Inc. Subsequent transactions between Honeywell, Inc. and Philips resulted in Honeywell Medical Electronics (HME) acquiring in 1983 all license rights under the amended 1973 AO–Philips agreement. In 1984, HME assigned these rights to Telectronics. Contemporaneously, Telectronics concluded negotiations with Warner Lambert Technologies (WLT), the successor to AO and thus the licensor of the '242 patent under the amended 1973 AO–Philips agreement, for a paid-up license on the implantable pacer devices. Accordingly, Telectronics became the final and current licensee under the amended 1973 AO–Philips licensing agreement.

The history of Medtronic's acquisition of the '242 patent is equally complex. In 1975, the original owner, AO sold the '242

patent to MT, Inc., subject to AO's continuing right as a licensor to receive royalties under its existing licenses. Thereafter, two assignments were executed: in 1976, AO assigned the '242 patent to American Pacemaker Corporation (APC), as successor-in-name to MT, Inc.; and in 1979, APC assigned that patent to Medtronic.

### ITC Investigation

On the basis of the above history of licensing and assignments, the ITC determined that Telectronics had acquired a license to make, use, and sell products covered by the '242 patent from parties whose rights were superior to those of Medtronic, and dismissed Medtronic's complaint. Cardiac Pacemakers, Order No. 52 (May 25, 1984). In addition, the ITC denied Medtronic's motion to disqualify Rackman and his firm without opinion. Cardiac Pacemakers, Order No. 44 (Apr. 27, 1984). After Medtronic filed a notice of appeal of Order No. 52 and Order No. 44 in this court, Medtronic moved for a voluntary dismissal of the appeal, which this court granted with prejudice.

### The Attorneys

Rackman has been Telectronics' primary outside patent counsel for about seven years. However, it is undisputed that an attorney-client relationship existed between Rackman and AO. Rackman, while an associate of the law firm of Amster and Rothstein, had served as outside patent counsel for AO in the 1960's. He prepared several draft applications for AO, some involving pacemaker technology, others involving non-pacemaker technology. Rackman had occasion to meet with AO in connection with these draft applications, and on these visits he met with Berkovits. Rackman avers that he has no recollection of working on a draft of the '242 patent application, but does not deny it because the '242 patent application drawings are in a style that he used. However, his name is not of record in the file history of the '242 patent. He avers that he has had no access to files concerning the '242 matter for over fifteen years, since his departure from Amster & Rothstein, and that Amster & Rothstein no longer has a '242 file. Hence, his only knowledge of the prosecution of the '242 patent is what is present in the public record.

Nealon has been in-house patent counsel for Telectronics since 1977. His attorney-client relationship with AO is also undisputed, because he was AO's in-house patent counsel during the period at issue. On March 4, 1969, Berkovits, as inventor, appointed Nealon and two other attorneys, "my Attorneys, with full power of substitution, and revocation to prosecute [the '242 patent] application, and to make alterations and amendments therein." All correspondence with the United States Patent and Trademark Office was sent to Nealon as principal attorney. According to the file history in the PTO, Nealon communicated with the PTO at least four times during the prosecution of the patent application.

## OPINION

### I. Jurisdiction

We accept jurisdiction over the September 8 Order denying disqualification under 28 U.S.C. § 1292(c)(1) (Supp. III 1985). The district court certified that the Order involved a controlling question of law, and that certification would materially advance the interests of the litigants, and the interests of judicial economy. *Sun Studs, Inc. v. Applied Theory Assocs., Inc.,* 772 F.2d 1557, 1566, 227 USPQ 81, 87 (Fed.Cir.1985).

### II. Choice of Law

We follow Second Circuit precedent in deciding this procedural question. *Sun Studs,* 772 F.2d at 1566, 227 USPQ at 87; *Panduit Corp. v. All States Plastic Mfg. Co.,* 744 F.2d 1564, 1572–76, 223 USPQ 465, 469–72 (Fed.Cir.1984). That court has stated that "a motion to disqualify an attorney is addressed to the discretion of the district court, and a ruling thereon will not be overturned absent a determination of abuse of discretion." *Cheng v. GAF Corp.,* 631 F.2d 1052, 1055 (2d Cir.1980), *vacated on other grounds,* 450 U.S. 903, 101 S.Ct. 1338, 67 L.Ed.2d 327 (1981) (citing *Hull v. Celanese Corp.,* 513 F.2d 568, 571 (2d Cir. 1975)). The question thus raised in this

appeal is whether the district court's refusal to disqualify Nealon and Rackman and his firm was such an abuse.

### III. Discussion

The Second Circuit has recognized the ABA Code of Professional Responsibility as providing appropriate guidance in disqualification proceedings. *Cheng,* 631 F.2d at 1055. However, that Circuit has adopted a "restrained approach" to attorney disqualification by focusing "primarily on preserving the integrity of the trial process." *Armstrong v. McAlpin,* 625 F.2d 433, 444 (2d Cir.1980) (en banc), *vacated and remanded on other grounds,* 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981) (citing *Board of Educ. of New York v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir.1979)). Thus,

> with rare exceptions disqualification has been ordered only in essentially two kinds of cases: (1) where an attorney's conflict of interests in violation of Canons 5 and 9 of the Code of Professional Responsibility undermines the court's confidence in the vigor of the attorney's representation of his client ... or more commonly (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation, for example, in violation of Canons 4 and 9, thus giving his present client an unfair advantage....
>
> ....
>
> Weighing the needs of efficient judicial administration against the potential advantage of immediate preventive measures, we believe that unless an attorney's conduct tends to "taint the underlying trial," by disturbing the balance of the presentations in one of the two ways indicated above, courts should be quite hesitant to disqualify an attorney.

*Board of Educ. v. Nyquist,* 590 F.2d at 1246 (footnotes and citations omitted).

### Disqualification under Canon 4

■ Canon 4 of the ABA Code of Professional Responsibility provides that "[a] lawyer should preserve the confidences and secrets of a client." Disqualification may be appropriate if:

> (1) the moving party is a former client of the adverse party's counsel; (2) there is substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have access to, relevant privileged information in the course of his prior representation of the client.

*SMI Indus. Canada Ltd. v. Caelter Indus., Inc.,* 586 F.Supp. 808, 815, 223 USPQ 742, 746 (N.D.N.Y.1984) (citing *Evans v. Artek Sys. Corp.,* 715 F.2d 788, 791 (2d Cir.1983); *Cheng,* 631 F.2d at 1055–56; Code of Professional Responsibility, Canon 4, Disciplinary Rule (DR) 4–101(B) (1980)); *see also Emle Indus., Inc. v. Patentex, Inc.,* 478 F.2d 562, 570 (2d Cir.1973). Thus, if no attorney-client relationship exists, no potential violation of Canon 4 can occur. *SMI Indus.,* 586 F.Supp. at 816, 223 USPQ at 747.

■ Medtronic claimed "former client" status as the assignee of AO. The district court correctly found that Medtronic was never a client of either Rackman or Nealon because the assignment of a patent does not transfer an attorney-client relationship. *See SMI Indus.,* 586 F.Supp. at 815, 223 USPQ at 747 (assignee of assets does not stand in shoes of its assignor for purposes of Canon 4) (citing *In re Yarn Processing Patent Validity Litigation,* 530 F.2d 83, 190 USPQ 523 (5th Cir.1976); *Beghin–Say v. Rasmussen,* 212 USPQ 614 (Dec.Comm'r Pat.1980)).

■ Medtronic also contended that the inventor, Berkovits, is entitled to "former client" status. Again, the district court correctly found that no attorney-client relationship existed. Berkovits was not the alter ego of AO. The patent was not issued to Berkovits, but to the original patentee, AO. Berkovits, as an employee of the corporation, merely assisted AO's attorneys in preparing and prosecuting the patent application, including the routine execu-

tion of a power of attorney appointing the attorneys chosen by AO. *See Sun Studs,* 772 F.2d at 1568, 227 USPQ at 89. Any confidences imparted to AO's attorneys were shielded solely by AO's attorney-client privilege, which was waived by AO's successor, WLT. Although Berkovits stated that Rackman had free access to his files and that he considered Rackman his lawyer, the district court found that Berkovits could not have reasonably expected that any information he conveyed to Rackman would have been withheld from AO. In sum, we hold there was no abuse of discretion in the district court's conclusion that Canon 4 was not violated because no attorney-client relationship existed between Medtronic or Berkovits, and Rackman or Nealon.

*Disqualification under Canon 5*

Medtronic contended that disqualification is required under Canon 5. Under this canon, if it is obvious that a lawyer or one in his firm ought to be called as a witness on behalf of his client, he and his firm must withdraw from the conduct of the trial, and may not continue representation in the trial. DR 5–102(A).

The district court concluded that Canon 5 was inapplicable to Nealon because he will not actually participate at trial. The court interpreted the Code of Professional Responsibility as precluding a dual role for an attorney only when he will testify, and is also involved in "the conduct of the trial." DR 5–102(A).

Medtronic contends that Rackman must be disqualified because he will be a witness on the issue of "new prior art." Because the issues of fraud or misconduct in the prosecution of the patent were absent from the case, the district court determined that Rackman's necessity as a witness depended on the evidence to be considered in the factual evaluation of obviousness. After careful consideration of the nature of the evidence to be introduced on the issue of obviousness, and because the obviousness issue relates solely to newly discovered prior art and not to whether the patents were properly procured in the first instance, the

district court found that Rackman was not an attorney who *"ought* to be called as a witness in the proceeding.... The phrase '*ought* to be called as a witness' has been narrowly construed to refer to an attorney 'who has crucial information in his possession which must be divulged' in the course of a trial." *SMI Indus.,* 586 F.Supp. at 817, 223 USPQ at 748 (emphasis in original) (citations omitted).

■ The district court also concluded that Rackman's testimony was not required on the infringement issue because the file wrapper contains all pertinent information required to determine the scope of the claim. Based upon the above discussion, we hold that the district court did not abuse its discretion in concluding that disqualification of Nealon and Rackman would be inappropriate under Canon 5.

*Disqualification under Canon 7*

Medtronic claims Telectronics' pleadings demonstrate professional "taint" because Nealon and Rackman omitted claims and defenses that, if included, would have required their withdrawal for ethical considerations. Specifically, Medtronic asserts that Telectronics: (1) omitted the '242 patent from the declaratory judgment action; (2) waived possible legitimate affirmative defenses under 35 U.S.C. § 112 (1982); (3) failed to assert that "new prior art" should have been disclosed to the patent office, thus making Rackman and Nealon parties to a fraud; and (4) used ambiguous pleadings by alleging that the '242 patent is invalid because the invention was anticipated and obvious when made.

The district court found that the omission of the '242 patent from the original complaint could not be viewed as unreasonable in light of Telectronics' successful license defense to the '242 patent in the ITC proceeding. As to Medtronic's remaining arguments concerning the decision of Telectronics' lawyers to prove invalidity of the '242 patent by showing only obviousness based on newly discovered prior art, the district court found that these tactics did not indicate that Telectronics' attorneys were unreasonable or ineffective. "In his

representation of a client, a lawyer may ... [w]here permissible, exercise his professional judgment to waive or fail to assert a right or position of his client." DR 7–101(B).

██ Accordingly, the district court did not abuse its discretion in concluding that Rackman and Nealon are entitled to structure the case according to their own professional judgment by selecting the defenses to be made against the '242 patent. Nor did it abuse its discretion in finding no showing that Rackman and Nealon were not vigorous in the representation of their client.

*Disqualification under Canon 9*

This Canon presents to us, and presented to the district court, the most difficulty. In its Certification Order, the district court stated:

> Whether "former client" status may be accorded to Berkovits is uncertain. However, to permit the same attorneys who had unrestricted access to the inventor, his records, his knowledge and strategy and who undertook the extensive collaboration needed to draft and prosecute his patent application to lead the attack to undermine those efforts and invalidate the resulting patent may taint the underlying trial and damage the integrity of the judicial process.

Certification Order at 15.

The bottom line, however, is that attorneys represent *clients*—not legal positions or patents. Having failed to establish the existence of any attorney-client relationship with itself or Berkovits, Medtronic asks this court to apply the vague standard of an "appearance of impropriety" in the guise of a rule "unique to the practice of patent law," and to disqualify counsel where there is no actual impropriety exhibited. We will not do this. Instead, we will apply the law of the Second Circuit, which like our case law recognizes the trend away from disqualification based solely on an appearance of impropriety. *New York Inst. of Technology v. Biosound, Inc.*, 658 F.Supp. 759, 762, 2 USPQ2d 2039, 2041 (S.D.N.Y.1987) (citing *Armstrong*, 625 F.2d

at 446); *accord Ah Ju Steel Co. v. Armco, Inc.*, 680 F.2d 751, 754 (CCPA 1982).

Telectronics does concede that it would be unusual to have counsel impeaching their own work product. But that is not this case. Rackman and Nealon's continued representation is subject to the condition that the proof of invalidity of the '242 patent will be limited to prior art that was not known at the time that the application was prosecuted. No change in any position taken during the prosecution of the '242 patent patent is required to recognize the significance of that art. Similarly, no change in position is required on the infringement issue because Telectronics' allegedly infringing products were not first produced until some time after the issuance of the '242 patent. Although counsel for Telectronics may have to testify when a particular piece of prior art became known to them, patent owners and attorneys are often asked that question during discovery, and no disqualification is required.

The district court stated in the Certification Order that:

> [t]he substantial ground for difference of opinion regarding the September 8 Order is, perhaps, best illustrated by two conflicting district court decisions: [*Hooper v. Steelplank Corp.*, 215 USPQ 829 (E.D. Mich.1981) and *SMI Indus.*]. *Hooper* generally supports Medtronic's position while *SMI* generally supports Telectronics' position.
>
> Notably, in *Sun Studs*, the Federal Circuit adopted, and cited with approval, the reasoning articulated in *Hooper* with respect to attorney disqualification in patent-based disputes.

Certification Order at 12.

Although this court in *Sun Studs* cited with approval the reasoning in *Hooper*, two important factual differences distinguish this case from *Hooper*. There the district court found that (1) the individual was the alter ego of the corporation, and thus, an attorney-client relationship existed; and (2) although a client may waive his right to object to his attorney's representation of adverse interests, the facts did not support a waiver. *Hooper*, 215 USPQ at 831.

Here, the district court found that (1) Berkovits was not the alter-ego of AO, and thus, an attorney-client relationship did not exist; and (2) WLT, the successor in interest to AO, had provided a written waiver to Rackman and Nealon's representation.

Under the law of the Second Circuit, these distinctions are crucial. In the Second Circuit, for purposes of Canon 9, the appearance of impropriety by itself is usually not a sufficient basis for disqualification. *See Board of Educ. v. Nyquist*, 590 F.2d at 1247; *New York Inst. of Technology*, 658 F.Supp. at 761, 2 USPQ2d at 2041. Only in unusual situations will the appearance of impropriety alone be sufficient to warrant disqualification. *Id.*

We do not agree that the alleged appearance of impropriety in this case presents the "unusual" situation in which disqualification on Canon 9 grounds alone is warranted.... This is not a case in which an attorney has represented one client and then switched over to his former client's adversary.... In addition, any appearance of impropriety is lessened by the fact that [Rackman and Nealon] did not undertake successive representation of clients with adverse interests.

*New York Inst. of Technology*, 658 F.Supp. at 762–63, 2 USPQ2d at 2041–42. Medtronic, furthermore, made no showing that Rackman or Nealon obtained actual confidences that would give Telectronics an unfair advantage. Although Medtronic asserts that during Berkovits' relationship with Rackman and Nealon, important decisions were made encompassing the scope and content of the prior art, the arguments to be made in support of non-obviousness, and the sufficiency of the disclosure, no specifics of the unfair advantage were set forth before the district court. Medtronic submits, however, that it has no burden to show the existence of specific confidences because the court must *assume* that during the prior representation confidences were disclosed. This assumption might well be valid if there had been a previously existing attorney-client relationship. *See T.C. Theatre Corp. v. Warner Bros. Pictures, Inc.*, 113 F.Supp. 265, 268–69 (S.D.N.Y. 1953). Here the district court found no such relationship existed, and therefore, the assumption is not applicable. Accordingly, the district court did not abuse its discretion.

## CONCLUSION

The district court's extraordinarily careful findings and conclusions are entirely consistent with the Second Circuit's restrained approach towards disqualification, *see United States Football League v. National Football League*, 605 F.Supp. 1448, 1452 (S.D.N.Y.1985). Thus, the district court did not abuse its discretion in denying Medtronic's motion to disqualify Nealon and Rackman and his firm, subject to the conditions that Telectronics would not raise an issue of fraud or misconduct regarding the prosecution of the '242 patent, and would restrict its proof of obviousness to art discovered subsequent to the issuance of the patent.

AFFIRMED.