**Affirmed and Memorandum Opinion filed July 13, 2023**



In The

# Fourteenth Court of Appeals

### NO. 14-22-00410-CV

## WILLIAM SCOTT TAYLOR; WPEM, LLC; AND W2W, LLC, Appellants

## V.

## HUNTON ANDREWS KURTH, LLP, F/K/A ANDREWS & KURTH, LLP; DOUGLAS ROMMELMANN; AND BRETT COOKE, Appellees

**On Appeal from the 334th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2020-32364**

### MEMORANDUM OPINION

This is a summary judgment case. Appellants William Scott Taylor, WPEM, LLC, and W2W, LLC, sued appellees Hunton Andrews Kurth, LLP, f/k/a Andrews & Kurth, LLP ("Andrews Kurth"), Douglas Rommelmann, and Brett Cooke, alleging that appellees were negligent and grossly negligent in the handling of a patent application. Appellees initially moved for summary judgment on the entities' claims against them, which the trial court granted. Appellants then sought

a summary judgment on Taylor's claims, which the trial court granted on Taylor's claims against Andrews Kurth and Cooke. The trial court then severed Taylor's claims against Rommelmann, making the interlocutory summary judgments final. Because we conclude the trial court committed no error when it granted the two summary judgment motions, we affirm.

## BACKGROUND

Taylor is an inventor. Taylor, along with his business partner Tina Pantoja, developed a software application called SafeCell. Pantoja had a preexisting entity, W2W. Taylor and Pantoja each became fifty percent owners of W2W. Taylor and Pantoja then assigned the rights to any patent derived from the SafeCell application to W2W.

W2W, through Taylor, approached Andrews Kurth partner Rommelmann to obtain a patent on the SafeCell application. At that time, Cooke was an Andrews Kurth associate who worked with Rommelmann on W2W's patent application. These discussions led to W2W engaging Andrews Kurth to patent the SafeCell idea. The engagement letter provides, in pertinent part, the following:

> We appreciate the opportunity for [Andrews Kurth] to assist W2W LLC (the "Company") in connection with general intellectual property matters, including preparation of a provisional patent application (the "Transaction"). This letter will confirm the nature and scope of our engagement, the agreement as to fees, and the role and responsibilities of [Andrews Kurth] and the client in connection with this engagement:

> Nature and Scope of Engagement

> The client for purposes of this engagement is W2W LLC. It is understood that this representation of W2W LLC does not create an attorney-client relationship with any related persons or entities, such as parents, subsidiaries, affiliates, employees, officers, directors, shareholders, or partners, unless specifically agreed otherwise in writing. It is also understood that this engagement is specifically

2

limited to the Transaction, unless expanded by written supplement to this letter, and will be terminated when we have completed the services specified in this letter and any written supplement. If W2W LLC later engages us to perform other services, the attorney-client relationship will be revived in accordance with the terms agreed upon at that time.

. . . .

Conclusion of Engagement

Upon completion of our representation of you in the Transaction, whether upon completion of the Transaction or due to termination or withdrawal, we will have no further obligation to advise you with respect to the Transaction or with respect to changes in the law or regulations that could have an impact upon your future rights and liabilities relating to the Transaction.

. . . .

Entire Agreement

This letter (a) constitutes the entire agreement between you and our Firm regarding your engagement of us to represent you with respect to the Transaction, (b) is subject to no oral agreements or understandings, and (c) can be modified or changed only by a further written agreement signed by you and our Firm. No obligation or undertaking not set forth expressly in this letter shall be implied on the part of either you or [Andrews Kurth].

We are pleased to have this opportunity to be of service and to work with W2W LLC. We request that you sign, date in the space provided below and return one copy of this letter to reflect that the Company is aware of and agrees to the terms and conditions of this representation.

. . . .

AGREED TO and ACCEPTED

W2W LLC

Pantoja signed the letter agreement as President of W2W and Taylor signed as W2W's Chief Information Officer on April 15, 2010.

Once W2W had retained Andrews Kurth, Andrews Kurth attorneys began

3

work to obtain a patent for the SafeCell application. Andrews Kurth, on April 23, 2010, filed a provisional patent application.[1]

Then, on April 21, 2011, Andrews Kurth filed a nonprovisional patent application.[2] That same day, Taylor and Pantoja signed a disclaimer confirming they agreed that Andrews Kurth and its lawyers did not represent them individually. This disclaimer provides:

**WE ARE NOT LAWYERS FOR INVENTORS
WHO ASSIGN THEIR INVENTIONS AND PATENT RIGHTS
TO EMPLOYERS OR OTHERS**

> We are patent lawyers for your employer or other entity to whom you have agreed to assign (transfer) your invention and patent rights for the invention. We work with you to develop a patent application with a description and claims to your invention, but the patent application and invention are to be assigned to your employer or other entity.

> We are not your lawyer. Please consult your own lawyer to protect your rights if you have any concern regarding ownership of your invention or the patent rights thereto.

Both Taylor and Pantoja signed the disclaimer on April 21, 2011, stating that they had read and understood the document. The April 21, 2011 patent application was rejected.

---

[1] "A provisional patent application is defined as a U.S. national application for patent filed in the [Patent Office] under 35 U.S.C. § 111(b). It allows filing without a formal patent claim, oath or declaration, or any information disclosure (prior art) statement. It provides the means to establish an early effective filing date in a nonprovisional patent application filed under 35 U.S.C. § 111(a) and automatically becomes abandoned after one year." *Larson Mfg. Co. of SD, Inc. v. AluminArt Products Ltd.*, 513 F.Supp.2d 1102, 1105, n.1 (S.D., 2007) (internal quotations omitted).

[2] "A nonprovisional patent application is defined as an application for patent filed under 35 U.S.C. §111(a) that includes all patent applications (i.e., utility, design, plant and reissue) except provisional applications. The nonprovisional application establishes the filing date and initiates the examination process." *Id.* at 1106, n.3 (internal quotations omitted).

Andrews Kurth subsequently submitted a second patent application. This application resulted in a patent being issued, Patent Number 9,148,762 (the "762 Patent"), for the SafeCell Application. W2W, however, did not pay Andrews Kurth's bill for legal services rendered. Those bills were still not paid when Taylor and Pantoja formally terminated W2W as an entity on March 27, 2017.[3] Taylor and Pantoja had previously assigned the 762 Patent to themselves individually.

More than a year after terminating W2W, Taylor and Pantoja created a new limited liability company, WPEM, LLC. They then assigned the 762 Patent to WPEM so WPEM could pursue a patent infringement suit against SOTI, Inc. WPEM's patent infringement suit failed and the federal district court assessed the defendant's attorney's fees against WPEM. *See WPEM, LLC v. SOTI, Inc.*, 2020 WL 555545, at *4, *8 (E.D. Tex. Feb. 4, 2020).

When the patent infringement suit failed, WPEM and Taylor, plus the terminated entity, W2W, filed a legal malpractice suit against Andrews Kurth, Rommelmann, and Cooke. Appellants alleged that Andrews Kurth, Rommelmann, and Cooke were negligent and grossly negligent in their handling of the 762 Patent application process which in turn caused appellants' damages including lost revenues and the loss of the patent infringement lawsuit. All of the alleged acts of malpractice at issue in this lawsuit occurred in the 2012 to 2013 time period. These include allegations that Andrews Kurth and its lawyers failed to prosecute the 762 patent correctly, failed to take steps to ensure the 762 patent would have priority over the similar software involved in the patent infringement suit, failed to advise appellants on changes to patent law, and failed to advise appellants to not

---

[3] *See* Tex. Bus. Orgs. Code § 11.102 ("Except as otherwise provided by this chapter, the existence of a filing entity terminates on the filing of a certificate of termination with the filing officer").

allow an earlier patent application to be abandoned.

Andrews Kurth and its attorneys moved for traditional summary judgment on the entities' claims against them. Andrews Kurth and its attorneys initially argued they were entitled to judgment as a matter of law on W2W's claims because W2W had been terminated as an entity and the winding up period provided by statute had expired before the lawsuit was filed. Andrews Kurth and its attorneys next argued they were entitled to judgment as a matter of law on WPEM's claims because (1) WPEM was never their client, and (2) W2W's attorney-client relationship and legal malpractice claim could not be transferred to WPEM. The trial court granted the motion, leaving Taylor as the sole remaining plaintiff.

Andrews Kurth and its attorneys then moved for traditional summary judgment on Taylor's claims against them. Here, they argued that (1) they were never his attorneys, (2) Taylor had expressly disclaimed any reliance on them, and (3) Taylor had personally suffered no damages. The trial court granted the motion as to Andrews Kurth and Cooke, but denied it as to Rommelmann. This left Taylor's claims against Rommelmann before the trial court, which the trial court severed to make the prior summary judgment orders final. This appeal followed.

## ANALYSIS

Appellants challenge the trial court's summary judgment orders in three issues. We address them in order.

## I. Standard of Review

We review de novo the trial court's ruling on a motion for summary judgment. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). In a traditional motion for summary judgment, the movant

6

must establish that no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accid. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). A genuine issue of material fact exists if the nonmovant produces more than a scintilla of probative evidence regarding the challenged element. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). A defendant moving for traditional summary judgment on an affirmative defense must conclusively establish each element of that affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). When the trial court does not specify the grounds on which it relied in granting summary judgment, we will affirm the summary judgment if any grounds presented in the motion are meritorious. *Olmstead v. Napoli*, 383 S.W.3d 650, 652 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

## II.   The trial court did not err when it granted appellees' motion for summary judgment on W2W's claims.

In their first issue, appellants initially argue that the trial court erred when it granted appellees' motion for summary judgment on W2W's claims because appellees did not include lack of capacity to maintain a lawsuit in a verified denial as required by Rule 93(2) of the Texas Rules of Civil Procedure. *See* Tex. R. Civ. P. 93(2) (providing that an allegation "that the plaintiff is not entitled to recover in the capacity in which he sues" must be included in a verified pleading). Appellees respond, among other arguments, that they were not required to file a verified denial because W2W lacked standing as a terminated entity. We agree with appellees.

7

Standing, a component of subject-matter jurisdiction, is a constitutional prerequisite to maintaining suit under Texas law. *Tex. Ass'n. of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444–45 (Tex. 1993); *Concerned Cmty. Involved Dev., Inc. v. City of Houston*, 209 S.W.3d 666, 670 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). Standing requires that a real controversy exists between the parties that will be determined by the judicial declaration sought. *Sammons & Berry, P.C. v. Nat'l Indem. Co.*, No. 14-13-00070-CV, 2014 WL 3400713, at *3 (Tex. App.—Houston [14th Dist.] July 10, 2014, no pet.) (mem. op.) (citing *Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1999)). Standing cannot be waived and can be raised for the first time on appeal. *Tex. Ass'n. of Bus.*, 852 S.W.2d at 444–45. Standing can also be raised in a traditional motion for summary judgment. *Bland Indep. Sch. Dist. v. Blue*, 34 S.w.3d 547, 554 (Tex. 2000). When reviewing standing on appeal, we construe the petition in favor of the plaintiff and, if necessary, review the entire record to determine whether any evidence supports standing. *Id.* at 446. Whether a party has standing to bring a claim is a question of law reviewed de novo. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998).

"At common law, dissolution terminated the legal existence of a corporation. Once dissolved, the corporation could neither sue nor be sued, and all legal proceedings in which it was a party abated." *Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547, 549–50 (Tex. 1981). To alleviate this harsh result, the Texas legislature enacted section 11.356(a) of the Texas Business Organizations Code, which continued the terminated filing entity's existence for three years for the purpose of "prosecuting or defending in the terminated filing entity's name an action or proceeding brought by or against the terminated entity[.]"[4] *See* Tex. Bus.

---

[4] The Texas Business Organizations Code defines "filing entity" as "a domestic entity

8

Orgs. Code Ann. § 11.356(a)(1). This permitted "the survival of an existing claim by or against the terminated filing entity." *See id.* § 11.356(a)(2); *Gomez v. Pasadena Health Care Mgmt., Inc.*, 246 S.W.3d 306, 316 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (applying prior version of statute). Under the Texas Business Organizations Code, the survival period is three years from the effective date of termination. *See* Tex. Bus. Orgs. Code Ann. § 11.356(a).

This statutory provision "is a survival statute, and not a statute of limitations." *Gomez*, 246 S.W.3d at 316. "The distinction between a statute of limitations and a survival statute is that a statute of limitations affects the time that a stale claim may be brought while a survival statute gives life for a limited time to a right or claim that would have been destroyed entirely but for the statute." *Id.* (internal quotations omitted). "Thus, a survival statute creates a right or claim that would not exist apart from the statute." *Id.* Therefore, once the survival period ends, a terminated company has no legal existence and can no longer bring a lawsuit because it lacks standing. *See Bailey v. Vanscot Concrete Co.*, 894 S.W.2d 757, 759 (Tex. 1995) (discussing non-surviving company in a merger); *Cohen Acquisition Corp. v. EEPB, P.C.*, No. 14-14-00330-CV, 2015 WL 240869, at *2 (Tex. App.—Houston [14th Dist.] May 19, 2015, pet. denied) (mem. op.) (citing Tex. Bus. Orgs. Code Ann. § 11.359(a)); *Armes v. Thompson*, 222 S.W.3d 79, 83–84 (Tex. App.—Eastland 2006, no pet.) (stating that when the decedent "passed away, she no longer represented a legal entity for purposes of filing suit and, therefore, did not have standing to assert a claim" because suits can only be maintained by and against parties having an actual or legal existence).

that is a corporation, limited partnership, limited liability company, professional association, cooperative, or real estate investment trust." Tex. Bus. Orgs. Code Ann. § 1.002(22). It defines a "terminated entity" as "a domestic entity the existence of which has been: (A) terminated in a manner authorized or required by this code . . . ." *Id.* at § 11.001(4). Finally, it defines a "terminated filing entity" as "a terminated entity that is a filing entity." *Id.* at § 11.001(5).

It is undisputed that Taylor and Pantoja formally terminated W2W's existence as a filing entity on March 27, 2017. Therefore, W2W's survival period expired on March 27, 2020. *See* Tex. Bus. Orgs. Code Ann. § 11.356(a). Appellants did not file this lawsuit until May 29, 2020, which was after the survival period ended. As a result, we conclude that W2W had ceased to exist for all purposes and therefore did not have standing to file suit. *Donica Grp., L.P. v. Thomson Excavating, Inc.*, No. 05-19-00235-CV, 2020 WL 57340, at *3 (Tex. App.—Dallas Jan. 6, 2020, no pet.) (mem. op.) (concluding Thomson Excavating did not have standing because it did not bring suit within three years of its termination date); *Smith v. CDI Rental Equipment, Ltd.*, 310 S.W.3d 559, 567 (Tex. App.—Tyler 2010, no pet.) ("Appellee CDI Rental Equipment, Ltd. did not exist at the time suit was filed against Smith. Therefore, it did not have standing to assert a claim against him.").

W2W argues that the survival statute did not extinguish its malpractice claims against appellees because the claims were not existing claims as defined in the survival statute. W2W argues that the actual malpractice occurred before W2W was terminated, but the claim did not accrue until after termination because the patent infringement litigation was not resolved until that time. We conclude this argument does not change the result because even if we accept W2W's accrual argument, W2W admits the claim accrued within the survival period and because they did not file suit during that three-year period, the claim was extinguished.

W2W admits that its claim against appellees accrued by October 2018, the date the patent infringement litigation was lost. The Texas Business Organization Code defines a "claim" as a right to payment, damages, or property, whether liquidated or unliquidated, accrued or contingent, matured or unmatured." *See* Tex. Bus. Orgs. Code Ann. § 11.001(1). The Code also defines "existing claim" as

10

(1) a claim that existed before an entity's termination and is not barred by limitations; and (2) a claim that exists after termination but before the third anniversary of the date of the entity's termination. *See* Tex. Bus. Orgs. Code Ann. § 11.001(3). Thus, even if we accept W2W's accrual argument, W2W's claims against appellees were "existing claims" under the Code because they accrued within the three-year survival period. It is undisputed that W2W did not file suit within that time period and therefore W2W's claims against appellees were extinguished. *See* Tex. Bus. Orgs. Code Ann. § 11.359(a) (providing that "an existing claim by or against a terminated filing entity is extinguished unless an action or proceeding is brought on the claim not later than the third anniversary of the date of termination of the entity."); *Cohen Acquisition Corp.*, 2015 WL 240869, at *2 (holding that terminated filing entities claims were extinguished when suit was not filed within the three-year survival period).

Finally, even if we accept W2W's argument that its claims against appellees do not fit within the Code's definition of "existing claim," the result would still be the same. As explained above, under the common law, a dissolved corporation could neither sue nor be sued. *Hunter*, 620 S.W.2d at 549–50. To alleviate the effect of this common law rule, the Texas legislature enacted section 11.356(a) of the Texas Business Organizations Code, which continued the terminated filing entity's existence for three years for the purpose of "prosecuting or defending in the terminated filing entity's name an action or proceeding brought by or against the terminated entity[.]" *See* Tex. Bus. Orgs. Code Ann. § 11.356(a)(1). This permitted "the survival of an existing claim by or against the terminated filing entity." *See id.* § 11.356(a)(2); *Gomez*, 246 S.W.3d at 316. Therefore, if a claim belonging to a terminated filing entity somehow does not fit within the definition of an "existing claim," it is extinguished immediately upon the filing entity's

11

termination.  *See Lord, Lewis & Coleman, LLC v. Bellaco, LLC*, No. 12-18-00126-CV, 2019 WL 1142451, at *3 (Tex. App.—Tyler March 12, 2019, pet. denied) (mem. op.) ("Regardless of whether Lord Lewis's claims were 'existing claims,' they were extinguished prior to Lord Lewis's filing of this lawsuit.").  Because the trial court did not err when it granted appellees' motion for summary judgment on W2W's claims, we overrule appellants' first issue on appeal.

### III.  Summary judgment was proper on WPEM's claims.

In their second issue, appellants argue that the trial court erred when it granted appellees' motion for summary judgment on WPEM's claims.  Here, WPEM makes two arguments.  First, it claims W2W and WPEM "effectively merged" and therefore W2W's malpractice claims transferred to WPEM.  Second, WPEM appeals to this Court to make an equitable exception to the longstanding rule that a malpractice claim requires privity between the plaintiff and the defendant attorneys.  Because Texas does not recognize an "effective merger doctrine," and there is binding precedent requiring that a plaintiff must be in privity with the allegedly negligent attorney to assert a malpractice claim, we overrule appellants' second issue.

Once again, the facts relevant to this issue are undisputed.  First and foremost, WPEM was never a client of appellees.  Additionally, W2W assigned the 762 Patent to Taylor and Pantoja on February 9, 2017.  W2W terminated its existence more than a month later, on March 27, 2017.  Then, more than a year after that, on April 4, 2018, Taylor and Pantoja formed WPEM.  The 762 Patent was then assigned to WPEM so it could pursue the patent infringement lawsuit against SOTI.  Finally, appellants concede there was no formal merger between W2W and WPEM.

We turn first to WPEM's malpractice claim.  The general rule in Texas is

that persons who are not in privity with the attorney cannot sue the attorney for malpractice. *McCamish v. F.E. Appling Interests*, 991 S.W.2d 787, 792 (Tex. 1999); *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 401 (Tex. App.—Houston [14th Dist.] 1997, writ dism'd) ("In other words, Texas law does not recognize a cause of action for negligence against an attorney asserted by one not in privity with that attorney."). In addition, attorney malpractice claims cannot be assigned. *Vinson & Elkins*, 946 S.W.2d at 399.

WPEM seeks to avoid this result by arguing that WPEM acquired W2W's attorney-client relationship with appellees because, in WPEM's view, it effectively merged with W2W when the 762 Patent was transferred to WPEM. *See Greene's Pressure Treating & Rentals, Inc. v. Fulbright & Jaworski, L.L.P.*, 178 S.W.3d 40, 44 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ("An attorney-client relationship will transfer when a merger of two corporations takes place."). Texas, however, does not recognize "effective mergers." Instead, a merger requires a formal process and plan that complies with the Texas Business Organizations Code. *See* Tex. Bus. Orgs. Code Ann. § 10.001(b) ("To effect a merger, each domestic entity that is a party to the merger must act on and approve the plan of merger in the manner prescribed by this code for the approval of mergers by the domestic entity."). Texas law is clear, a disposition of assets such as the transfer of the 762 Patent, even if it was a direct transfer from W2W to WPEM, is "not a merger . . . for any purpose." *See id.* at § 10.254(a); *Greene's Pressure Treating & Rentals, Inc.*, 178 S.W.3d at 44 (observing that a "mere transfer of assets" does not transfer an attorney-client relationship). Further, the fact that Taylor and Pantoja transferred the 762 Patent to WPEM did not also transfer or assign the attorney-client relationship. *See Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 836 F.2d 1332, 1336 (Fed. Cir. 1988) ("[T]he assignment of a patent does not transfer an

attorney-client relationship"). We conclude that WPEM was not a client in privity with appellees and could not sue appellees for legal malpractice.

Appellants appeal to equity to "save WPEM's claims." Appellants do not, however, cite any binding authority[5] establishing an equitable exception to either the privity requirement for general malpractice claims or the non-recognition of "effective mergers." Because Texas public policy on both the privity requirement and the non-recognition of "effective mergers" is clear, we decline appellants' invitation to blaze such a trail. *See Kroger Co. v. Milanes*, 474 S.W.3d 321, 336, n.6 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (declining party's request to change the law because that is not the function of an intermediate court of appeals); *Bren-Tex Tractor Co., Inc. v. Massey-Ferguson, Inc.*, 97 S.W.3d 155, 161 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (stating that creation of a new tort duty is beyond the province of an intermediate appellate court). Having addressed and rejected appellants' arguments raised in their second issue, we conclude that the trial court did not err when it granted appellees' motion for summary judgment on WPEM's malpractice claim. We overrule appellants' second issue.

## IV. The trial court did not err when it granted summary judgment on Taylor's claims against Andrews Kurth and Cooke.

Finally, in their third issue, appellants argue that the trial court erred when it granted summary judgment on Taylor's individual claims against Andrews Kurth and Cooke. Damages are an element of Taylor's legal malpractice cause of action.

---

[5] The Texas cases cited by appellants are distinguishable because they are limited to estate-planning malpractice. In *Belt v. Oppenheimer, Blend, Harrison & Tate, Inc.*, the Supreme Court held that an executor was in privity with the decedent's attorneys and could sue them for estate-planning malpractice. 192 S.W.3d 780, 787 (Tex. 2006). In *Smith v. O'Donnell*, the Supreme Court, relying on *Belt*, refused to "create a rule that would deprive an estate of any remedy for wrongdoing that caused it harm by prohibiting the estate from pursuing survivable claims the decedent could have brought during his lifetime." 288 S.W.3d 417, 419 (Tex. 2009).

*See Rogers v. Zanetti*, 518 S.W.3d 394, 400 (Tex. 2017). They are also an element of a negligent misrepresentation claim. *Wal-Mart Stores, Inc. v. Xerox State & Local Solutions, Inc.*, 663 S.W.3d 569, 582, n.55 (Tex. 2023). Because Taylor, individually, suffered no damages, we disagree that the trial court erred when it granted Andrews Kurth and Cooke's motion for summary judgment on Taylor's claims.

Under the corporate injury rule, an owner of a company cannot sue to recover damages personally for a wrong done to the company. *See Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 775 (Tex. 2020) ("A corporate stockholder cannot recover damages personally for a wrong done solely to the corporation, even though he may be injured by that wrong."); *Linegar v. DLA Piper, LLP (US)*, 495 S.W.3d 276, 279 (Tex. 2016) (same). Texas courts also apply the rule discussed in *Pike* to limited liability companies. *See Sherman v. Boston*, 486 S.W.3d 88, 94 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ("A member of a limited liability company lacks standing to assert claims individually where the cause of action belongs to the company.") (internal quotations omitted).

The record conclusively establishes that Taylor suffered no damages from the alleged professional negligence or negligent misrepresentation because either WPEM or W2W owned the patent at all times relevant to this appeal. The damages Taylor seeks are the amount of his share of purported revenues that the companies would have received from enforcing the patent but for the alleged negligence. Taylor, however, cannot recover lost revenues of the companies because of the corporate injury rule. *See Sherman*, 486 S.W.3d at 94.

The cases Taylor relies upon do not change this result because they are distinguishable. In *Linegar*, the Texas Supreme Court acknowledged the corporate injury rule but nonetheless allowed the plaintiff, who was a shareholder in the

15

corporation, to recover damages from the corporation's law firm. *Linegar*, 495 S.W.3d at 280–81. But the unique facts present in *Linegar* do not exist here because that plaintiff suffered individual losses apart from the corporation's and also had an attorney-client relationship with the law firm himself. *Id.* at 281. Taylor had neither individual losses because he did not own the patent nor did he have an attorney-client relationship with Andrews Kurth or Cooke. The same is true in the other cases cited by Taylor. *See Murphy v. Campbell*, 964 S.W.2d 265, 268 (Tex. 1997) (corporate stockholders had standing to sue accounting firm for breach of duty owed directly to them); *Stephens v. Three Finger Black Shale P'ship*, 580 S.W.3d 687, 729 (Tex. App.—Eastland 2019, pet. denied) (court sustained an award of damages against challenge under the corporate injury rule because plaintiff sued for his own individual damages for breach of professional duty owed to him individually); *Aloysius v. Kislingbury*, 2014 WL 4088145, *4 (Tex. App.—Houston [1st Dist.] Aug. 19, 2014, no pet.) (mem. op.) (plaintiff sued co-owner of company alleging co-owner breached contract with plaintiff to share revenues of company); *Saden v. Smith*, 415 S.W3d 450, 463 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (plaintiff had standing because he alleged defendant breached contract between them as well as fiduciary duty defendant owed plaintiff); *Faour v. Faour*, 789 S.W.2d 620, 622 (Tex. App.—Texarkana 1990, writ denied ("This principle is not an exception to the general rule, but is only a recognition that a shareholder may sue for violation of his individual rights, regardless of whether the corporation also has a cause of action.").

Taylor also filed "derivative claims seeking derivative damages." Taylor asserts that even if W2W is defunct, he still "has the legal right to assert the claims derivatively as a member and beneficial owner." This argument is also unavailing because the expiration of the survival period does more than just terminate W2W's

16

existence for all purposes; it causes all claims to be extinguished. Tex. Bus. Orgs. Code § 11.356(a)(1) (entity), § 11.359(a) (claims); *see also Pellow v. Cade*, 990 S.W.2d 307, 313 (Tex. App.—Texarkana 1999, no pet.) ("When a cause of action is outside a limitation statute, it is only barred if the limitations issue is raised by the defendant. But when a cause of action is outside a survival statute's ambit, the cause of action is extinguished and no longer exists.").

As a result, Taylor, as a former owner of W2W, cannot sue derivatively because W2W's claims are extinguished. *See* Tex. Bus. Orgs. Code § 11.359(a) ("[A]n existing claim by or against a terminated filing entity is extinguished unless an action or proceeding is brought on the claim not later than the third anniversary of the date of termination of the entity."); *see also Regal Ware, Inc. v. CFJ Mfg., L.P.*, 2015 WL 1004380, at *3 (Tex. App.—Eastland Feb. 27, 2015, no pet.) (mem. op.) ("If, on the other hand, an action seeks to redress a wrong done to the corporation, or if the claim arose solely as a consequence of a corporate wrong, the claim is derivative in nature and will not survive past the windup period."); *Carter v. Harvey*, 525 S.W.3d 420, 429 (Tex. App.—Fort Worth 2017, no pet.) (holding that shareholder could not bring derivative claim after the expiration of the statutory winding down period because the claims had been extinguished); *Alsheikh v. Altawil*, 2015 WL 392220, at *4 (Tex. App.—Fort Worth Jan. 29, 2015, no pet.) (mem. op.) ("A shareholder does not have standing to bring a derivative claim that the corporation can no longer bring.").

Finally, Taylor argues that he suffered a loss distinct from the loss the owners of the patent suffered, namely the attorney's fees awarded as a sanction in the patent infringement litigation against SOTI. SOTI moved to recover its attorneys' fees in the federal infringement litigation. The federal court agreed and ordered WPEM, not Taylor, to pay SOTI attorney's fees in an approximate amount

of $180,000.  *See WPEM, LLC*, 2020 WL 555545, at *8.  WPEM appealed those fees and lost the appeal.  At the time of Taylor's deposition, those fees had not been paid by WPEM or anyone else.  According to Taylor, he did not pay the fee award because WPEM is a limited liability company and he is not individually liable for the company's debt.  These alleged personal damages are speculative and thus no damages.  *See Arnold & Itkin, L.L.P. v. Dominguez*, 501 S.W.3d 214, 224 (Tex. App.—Houston [1st Dist.] 2016, no pet.) ("This alleged injury is hypothetical and speculative because the clients have not further pursued their claims in Mexico and thus have not—and may never—incur such expenses."); *Peterson Group, Inc. v. PLTQ Lotus Group, L.P.*, 417 S.W.3d 46, 64 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (speculative damages are not recoverable).

The trial court did not err when it granted Andrews Kurth and Cooke's motion for summary judgment on Taylor's individual claims.  We overrule Taylor's third issue.

18

## CONCLUSION

Having overruled appellants' issues on appeal, we affirm the trial court's judgment.

/s/    Jerry Zimmerer
       Justice

Panel consists of Justices Wise, Zimmerer, and Wilson.