Aubrey D. MARTIN, a/n/f Michael
Martin, a Minor, Appellant,

v.

TEXAS WOMAN'S HOSPITAL,
INC., Appellee.

No. 01–94–00941–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 15, 1996.

John Tavormina, Carl D. Kulhanek, Jr., Houston, for appellant.

Barbara Hilburn, Trace Sherer, Houston, for appellee.

Before SCHNEIDER, C.J., and COHEN and HUTSON–DUNN, JJ.

## OPINION ON EN BANC SUBMISSION

COHEN, Justice.

This is an appeal from a summary judgment. The court granted en banc review on its own motion. We must decide what happens when a minor sues a corporation within the limitations period of the Medical Liability Act,[1] but not within the three years following corporate dissolution under the corporation survival statute.[2] We hold the corporate survival statute controls.[3] We reverse and remand.[4]

### Summary of Facts

Michael Martin was born at Texas Women's Hospital (TWH) on January 13, 1978, with injuries. Shortly after Michael's birth, TWH procured an endorsement to its medical malpractice insurance policy increasing the coverage from $300,000 to $750,000. This endorsement was back-dated to the date of Michael's birth, January 13, 1978.

On August 18, 1978, seven months after Michael was born, TWH sold its assets to Hospital Corporation of America (HCA) for $750,000. The insurance policy was included in the assets sold to HCA. On April 10, 1979, TWH dissolved. The dissolution of TWH was done without notice to Michael's parents.

Michael's father, Aubrey D. Martin, sued TWH and the delivering physician[5] on January 9, 1992, which was before Michael's fourteenth birthday.[6] Aubrey sought damages for injuries Michael allegedly sustained at birth. After filing suit, Aubrey discovered TWH had dissolved.

TWH moved for summary judgment, contending Aubrey sued too late. TWH argued that, even though Aubrey timely sued under the Medical Liability Act, Michael's suit was barred by the corporation survival of remedies statute because it was filed more than three years after TWH's dissolution. The trial judge granted the summary judgment and a severance. Aubrey contends the summary judgment was in error because the statute of limitations in the Medical Liability Act controls, and if it does not, there is a fact issue about whether TWH complied with the corporate survival of remedies statute.

### Standard of Review

■ To obtain summary judgment under Tex.R.Civ.P. 166a(c), the movant must establish there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546, 548 (Tex. 1985); *Enchanted Estates v. Timberlake Improvement Dist.*, 832 S.W.2d 800, 801 (Tex. App.—Houston [1st Dist.] 1992, no writ). When a defendant moves for summary judgment on the basis of an affirmative defense, he assumes the burden of proving as a matter of law that the suit was barred by the

1. Tex.Rev.Civ.Stat. art. 4590i, § 10.01 (Vernon 1996).

2. Act of March 29, 1955, 54th Leg., R.S., ch. 64, 1955 Tex.Gen.Laws 239, 294 (amended 1987, 1989, 1991 & 1993) (current version at Tex.Bus. Corp.Act. art. 7.12 (Vernon Supp.1996)).

3. This holding is joined by Chief Justice Schneider and Justice Hutson–Dunn, who join this opinion, and by Justices Wilson and Taft, who agree on this point but would affirm.

4. The decision to reverse is joined by Chief Justice Schneider and Justice Hutson–Dunn, who join this opinion, and by Justices O'Connor, Mirabal, and Andell, who would hold that the Medical Liability Act controls this case.

5. Michael's original petition named Women's Hospital of Texas and Eberhard C. Lotze, M.D., as defendants. Michael's first amended petition

substituted Texas Women's Hospital for Women's Hospital of Texas. Finally, in his fourth amended petition, Michael named as defendants the doctor, Texas Woman's Hospital, and a number of other entities that currently operate as the hospital formerly known as Texas Women's Hospital: Woman's Hospital, Inc., Hospital Corporation of America, Hospital Corporation of America, d/b/a Woman's Hospital of Texas, Inc., Woman's Hospital of Texas, Inc., Woman's Hospital of Texas, Inc. d/b/a Recruitment Resources Network, Woman's Hospital of Texas Inc. d/b/a Family Birthing Center, Woman's Hospital of Texas, Inc. d/b/a The Woman's Place, and Obstetrical & Gynecological Associates, P.A. Eberhard C. Lotze, M.D., and Obstetrical & Gynecological Associates, P.A., settled with Michael. The rest remain as defendants.

6. Although not an issue in this case, under article 4590i, section 10.01, a suit could have been filed for Michael up to the day he turned 20. *Weiner v. Wasson*, 900 S.W.2d 316, 321 (Tex.1995).

affirmative defense. *See Delgado v. Burns,* 656 S.W.2d 428, 429 (Tex.1983). In reviewing the granting of summary judgment, we take as true all evidence favorable to the nonmovant. *Nixon,* 690 S.W.2d at 548–49. Every reasonable inference must be indulged in favor of the nonmoving party, and any doubts are to be resolved in its favor. *Id.* at 549.

### Medical Liability Act

In point of error one, Michael argues that, because his claims are health care liability claims, they are governed by the Medical Liability Act, which provides in part:

Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date of the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed; provided that minors under the age of 12 years shall have until their 14th birthday in which to file, or have filed on their behalf, the claim. Except as herein provided, this subchapter applies to all persons regardless of their minority or other legal disability.

Tex.Rev.Civ.Stat. art. 4590i, § 10.01 (Vernon 1996). It is undisputed that the claim was filed before Michael's fourteenth birthday and is therefore timely if the Medical Liability Act controls.

■ In contrast, TWH asserts that Michael's claim is governed by the corporation survival of remedies statute contained in article 7.12 of the Texas Business Corporation Act, which provided in part, that dissolution:

shall not take away or impair any remedy available to or against such corporation, its officers, directors, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within three years after the date of such dissolution.

Act of March 29, 1955, 54th Leg., R.S., ch. 64, 1955 Tex. Gen. Laws 239, 294 (amended 1987, 1989, 1991 & 1993). Asserting that this act provides the exclusive method by which a plaintiff may sue a dissolved corporation,

TWH contends that Michael's claim is barred because suit was not brought within three years of TWH's formal dissolution. We agree and hold that this case is governed by the survival of remedies statutes in the Business Corporations Act, not by the statute of limitations in the Medical Liability Act.

### Minor's Right to Sue

■ Article 7.12 is a survival statute, not a statute of limitations. At common law, the legal existence of a corporation was terminated upon dissolution. *Hunter v. Fort Worth Capital Corp.,* 620 S.W.2d 547, 549 (Tex.1981). In order to alleviate the draconian effect of this principle, the courts developed the "trust fund theory," an equitable doctrine whereby the assets of a dissolved corporation that had been distributed to shareholders were said to be impressed with a lien in favor of creditors. *Id.* The legislature ultimately codified the trust fund theory in article 7.12. Creditors were not given unlimited access to the dissolved corporation's assets, however; rather, in the interest of orderly and final distribution of assets, the period of time during which a corporation could be sued was limited to three years.

■ The distinction between a statute of limitations and a survival statute is that:

a statute of limitations affects the time that a stale claim may be brought while a survival statute gives life for a limited time to a right or claim that would have been destroyed entirely but for the statute. These survival statutes arbitrarily extend the life of the corporation to allow remedies connected with the corporation's existence to be asserted.

*Davis v. St. Paul Fire & Marine Ins. Co.,* 727 F.Supp. 549, 551 (D.S.D.1989) (citations omitted). A survival statute creates a right or claim that would not exist apart from the statute. *M.S. v. Dinkytown Day Care Ctr., Inc.,* 485 N.W.2d 587, 589 (S.D.1992).

■ A suit against a dissolved corporation is a statutory claim, and a plaintiff must accept the restraints of a statutory claim along with its benefits. *See generally Mingus v. Wadley,* 285 S.W. 1084, 1087 (Tex. 1926) (statutory proceedings are in deroga-

tion of common law; thus, remedies under workers' compensation act are "mandatory and exclusive"); *Johnson v. City of Houston,* 813 S.W.2d 227, 229–30 (Tex.App.—Houston [14th Dist.] 1991, writ denied) (cause of action for wrongful death ceases to exist upon death of statutory beneficiary). Thus, when a plaintiff fails to sue within the limitations period, the claim still exists, but, unless the statute of limitations affirmative defense is waived, it can no longer be brought against a defendant. By contrast, if a party fails to sue within the time limits of the survival statute, there is no longer an entity which can be sued. After its dissolution, a corporation cannot be revived by a statute of limitations tolling provision, no matter how sweeping its reach.

■ The survival statute provides benefits for both the claimant and for the dissolved corporation. The claimant is allowed to sue a dissolved corporation for three years after its dissolution, which he could not do at common law. The corporation's benefit is that its potential liability is not unlimited, but is terminated in three years. In order to enjoy these respective benefits, both the claimant and the corporation must meet certain requirements. The claimant must sue within three years of the dissolution, and the corporation must have given notice of its dissolution to all known claimants, under Texas Business Corporation Act, article 6.04. Act of May 25, 1967, 60th Leg., R.S., ch. 657, § 14, 1967 Tex.Gen. Laws 1717, 1725 (amended 1991) (current version at TEX.BUS.CORP. ACT ANN. art. 6.04 (Vernon Supp.1996)).

It is undisputed that appellant did not sue within three years after dissolution. Therefore, if TWH proved as a matter of law that it complied with article 6.04 by notifying all "known claimants," appellant cannot sue TWH.

Point of error one is overruled.

### Summary Judgment Evidence of Notice under Article 6.04

In point of error two, Aubrey contends he was a known claimant and TWH failed to notify him of the dissolution, as required by article 6.04. Aubrey contends TWH should not get the benefit of article 7.12 because it did not comply with article 6.04 by giving the required notice.

■ It is uncontroverted that appellant did not sue TWH within three years of its dissolution and also that TWH never notified Michael of its dissolution. Article 6.04(A)(2) required TWH to:

> cause written notice by registered mail of its intention to dissolve to be mailed to each known creditor of and claimant against the corporation.

Act of May 25, 1967, 60th Leg., R.S., ch. 657, § 14, 1967 Tex.Gen. Laws 1717, 1725 (amended 1987 and 1991) (current version at TEX. BUS.CORP.ACT art. 6.04 (Vernon 1996)). Thus, if Michael was a known claimant, he may sue because of TWH's failure to notify him of the dissolution. Conversely, if Michael was an unknown claimant, TWH did not have to notify him and Michael cannot sue TWH.

TWH gets the benefit of article 7.12 only if it complied with article 6.04(A)(2). In order to comply, TWH had to give registered mail notice of dissolution to any "known creditor of or claimant against the corporation." *See* Art. 6.04, § A(2), TEX.BUS.CORP.ACT ANN. (Vernon 1980), effective at the time of dissolution. We hold there is a genuine issue of material fact about whether appellant was a "known claimant" against TWH. Thus, reversal is required because TWH admits it never notified appellant.

The standard of review is particularly significant in this case because all evidence showing that TWH knew of Michael's claim was circumstantial. Appellant was the nonmovant. Therefore, we must take all of his evidence as true. Michael Martin was born January 13, 1978. Twenty days later, on February 2, 1978, TWH's insurance company increased TWH's policy limits at TWH's request from $300,000 to $750,000 and backdated that increase to take effect on the very day of Michael Martin's birth, January 13, 1978. About eight-and-one-half months later, on October 18, 1978, TWH sold its assets for $750,000, the exact amount of the recently increased insurance limits.

If we are to grant appellant all reasonable inferences arising from these facts, then we must grant him the following inferences: 1) TWH moved quickly after Michael Martin's birth to increase its limits, and backdate them to the date of his birth, January 13, 1978, because TWH knew a significant claim would be made, and 2) the $750,000 figure was selected because shareholders were willing to sell the assets for $750,000, as they later did, and wanted assurance that at least that much of the proceeds would be protected from medical malpractice plaintiffs, Michael Martin being prominent in their thoughts.

## Appellant's Failure to Plead He Was a "Known Claimant"

Justice Taft points out that appellant never pleaded he was a "known claimant" against the corporation, but only that he was a "potential claimant" and a "possible creditor," and concludes that is insufficient to create a fact issue because, under article 6.04, only "known" claimants must be notified.[7] If this is a defective pleading, we hold it has been waived.

TWH did not object or specially except in the trial court to appellant's lack of pleading that he was a "known claimant," nor has TWH raised that complaint on appeal. Thus, if this is a pleading defect, it has been waived. TEX.R.CIV.P. 90. Moreover, TWH contested the issue on the merits in the trial court. TWH tried to prove that Michael Martin was not a known claimant by showing that it had requested an insurance increase in a letter dated four days before Michael Martin's birth (January 9, 1978) and that request was stamped "received" by TWH's insurer on January 13, 1978, the day of Michael's birth. TWH argued that this conclusively showed that Michael's injuries were neither the reason for the increased insurance or for the fact that it began on the day of his birth and that it was therefore entitled to summary judgment because there was no other evidence, direct or circumstantial, that it knew of this claim. Thus, the issue was tried by consent. TEX.R.CIV.P. 67.

## TWH's Evidence

Unfortunately for TWH, the January 9, 1978, letter was not part of its summary judgment proof. TWH claims the letter appears at Tr. 386–88. It does not. Transcript

7. The statute does not mention "potential" claimants, and we agree with Justice Taft that almost any former medical patient would be entitled to notice of corporate dissolution if the statutory phrase *"known* claimant against the corporation" really means *"known potential* claimant against the corporation." We do not agree that the cases cited in Justice O'Connor's concurring opinion support the proposition that a dissolving corporation must notify "potential" claimants. The case of *Curtis v. Stephens*, 853 S.W.2d 822 (Tex.App.—Fort Worth 1993), *writ denied per curiam*, 864 S.W.2d 492 (Tex.1993), is distinguishable because the plaintiff in *Curtis* sued the corporation at least nine months before it dissolved, litigated against it continuously during the three-year survival period, and the corporation continued to represent its existence to a district court for years, never disclosing it had dissolved. 853 S.W.2d at 824. Thus, a violation of article 6.04 was plainly pleaded and proved there. This case is certainly more subtle than that. The plaintiff in *Curtis* was obviously known, not "potential." Moreover, the facts in *D.B. & M. Co. v. National Chrome Plating Co.*, No. 5–92–1608–CV, —— S.W.2d —— (Tex.App.—Dallas, Dec. 29, 1994, motion for reh'g still pending), 1994 W.L. 728346, are also distinguishable. In *D.B. & M.*, the defendant, National Chrome, leased property from D.B. & M. During the lease term and,

more important, before National Chrome dissolved, the Texas Water Commission "ordered" National Chrome "to clean up chromium deposits spilled on the premises." Slip. op. at 1. National Chrome allegedly never cleaned up the premises; instead, it dissolved. More than three years later, its landlord, D.B. & M., sued for damages arising from soil contamination. *Id.* Obviously, any tenant who is ordered by the State to clean up its pollution and doesn't should expect to be sued by its landlord. Thus, the court held that "because the Texas Water Commission ordered National Chrome to clean up the chromium contamination, *National Chrome was certainly aware of at least the potential liability it had to D.B. & M. as its landlord.*" Slip op at 3 (emphasis added). That is an understatement. A claim by D.B. & M under those circumstances seems so certain that we would consider D.B. & M. to have been a "known" claimant, not a "potential" one. There was certainly better reason for a claim to have been expected from D.B. & M. than from appellant. Thus, the language in *D.B. & M.* about potential claimants seems both questionable and unnecessary to the opinion, which is still pending on motion for rehearing and thus is not yet final. Because of the vastly different facts, we find little guidance in *D.B. & M.*

386 is a business records affidavit stating that three pages are attached; however, only two pages are attached, and neither is the January 9, 1978, letter. One of those pages, Transcript 387, is a piece of paper stating, "received Jan. 13, 1978 Texas Medical Liability Underwriting Association Manager." There is no accompanying request for increased coverage. Moreover, the summary judgment evidence does not show that TWH's insurer was "Texas Medical Liability Underwriting Association." The second page is a letter of September 20, 1978, requesting cancellation of coverage, which is irrelevant to this issue.

The letter of January 9, 1978, appears elsewhere in the record (Tr. 334) as an exhibit to "Defendant's Second Supplemental Response to Plaintiff's Request for Production of Documents." This document, however, is not part of the summary judgment proof.

We therefore conclude that the trial judge had before him no summary judgment evidence that TWH requested the increased coverage four days before Michael Martin's birth. If the January 9, 1978, letter were part of the summary judgment proof, an argument could be made, as TWH vigorously urges in its brief, that the letter wholly rebuts the inference that the increased and backdated coverage shows TWH's knowledge of this claim. No summary judgment evidence we have found contradicts TWH's claim that it requested the increased limits on January 9, 1978, or that its insurer received the request on January 13, 1978.[8] Appellant's brief points out that the transcript includes numerous documents, such as the January 9, 1978, letter, that we cannot consider because they were not presented to the trial court. He states:

It must be noted that TWH has requested that virtually every document filed in this case be included in the transcript. The vast majority of whatever evidence is contained in these discovery products and other documents is unavailable to TWH to support the trial court's granting of summary judgment because such evidence was not presented to the trial court in TWH's motion for summary judgment or TWH's reply, and TWH's reliance on any of this "evidence" to support summary judgment would constitute presenting a new ground, theory or argument that cannot be used to affirm the granting of summary judgment.

Appellant's brief, page 31, footnote 9. Thus, we need not decide whether the January 9, 1978, letter conclusively rebuts the inferences arising from the increase and backdating of the insurance policy.

Based on this particular state of the record, appellant has raised a fact issue about whether TWH knew of his claim and failed to notify him by registered mail, thus causing TWH to lose the protection of the three-year limit on suits found in TEX. BUS. CORP. ACT ANN. art. 7.12.

Point of error two is sustained.

The judgment is reversed, and the cause is remanded.

O'CONNOR, J., concurs in an opinion in which MIRABAL and ANDELL, JJ., join.

TAFT, J., dissents in an opinion in which WILSON, J., joins.

HEDGES, J., is recused.

O'CONNOR, Justice, concurring.

I agree with the majority that this case should be reversed because the defendant did not satisfy its burden on summary judgment. I write separately because there is another ground for reversal—I believe the Medical Liability Act[1] controls the disposition of this case.

As stated in the majority opinion, Michael's father, Aubrey D. Martin, filed suit against TWH and the delivering physician on January 9, 1992, which was before Michael's

<hr>

8. One reason for the lack of dispute may be that TWH raised the issue in its "Reply to Plaintiffs Response to Defendants Motion for Summary Judgment," which appears to bear a file date of May 26, 1994, and bears a certificate of service for that date, which is one day before the trial judge granted the summary judgment on May 27,

1994. However, appellant has not complained of the untimely filing of that document or of the denial of any motion to strike or motion for continuance.

1. TEX.REV.CIV.STAT. art. 4590i, § 10.01 (1996).

fourteenth birthday.[2] In its motion for summary judgment, TWH argued Aubrey filed suit too late because Michael's suit was barred by the corporation survival of remedies statute,[3] which precludes suits filed more than three years after a corporation's dissolution.

In point of error one, Michael argues that, because his claims are health care liability claims, they are governed by the Medical Liability Act, which provides in part:

> Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date of the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed; provided that *minors under the age of 12 years shall have until their 14th birthday in which to file, or have filed on their behalf, the claim.* Except as herein provided, this subchapter applies to all persons regardless of their minority or other legal disability.

TEX.REV.CIV.STAT. art. 4590i, § 10.01 (1996) (emphasis added). It is undisputed that the claim was filed before Michael's fourteenth birthday and is therefore timely if the Medical Liability Act controls.

In contrast, TWH asserts that Michael's claim is governed by the corporation survival of remedies statute contained in article 7.12 of the Texas Business Corporation Act. Article 7.12 provides that dissolution:

> shall not take away or impair any remedy available to or against such corporation, its officers, directors, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within three years after the date of such dissolution.

Act of March 29, 1955, 54th Leg., R.S., ch. 64, 1955 Tex. Gen. Laws 239, 294 (amended 1987, 1989, 1991 & 1993). TWH contends that

article 7.12 provides the exclusive method by which a plaintiff may sue a dissolved corporation. Thus, TWH argues, because Michael's suit was not brought within three years of TWH's formal dissolution, his claim is barred. I find no Texas authority that addresses the interplay between these two statutes.

Historically, Texas has always been protective of its minor children involved in the legal process. *Hogan v. Hallman*, 889 S.W.2d 332, 339 (Tex.App.—Houston [14th Dist.] 1994, writ denied). Texas has continuously provided statutory protection by deferring the time in which minors could file suit for injury to two years after attaining their majority. *Sax v. Votteler*, 648 S.W.2d 661, 663 (Tex.1983); *Hogan*, 889 S.W.2d at 339; Act of February 5, 1841, Laws of the Republic of Texas, at 166; 2 H. GAMMEL, Laws of Texas 630 (1898). At one time, the Texas Constitution tolled limitations for minors for seven years after removal of disabilities. *Sax*, 648 S.W.2d at 663; *Hogan*, 889 S.W.2d at 339; TEX. CONST. art. 12, § 14 (1869). The protection afforded minors now extends to two years after the minor attains majority or disabilities are removed. *Sax*, 648 S.W.2d at 663 (holding § 10.01 was unconstitutional because it required minor to file medical malpractice suit before 8th birthday); *see also Weiner v. Wasson*, 900 S.W.2d 316, 318–19 (Tex.1995) (holding § 10.01 of art. 4590i was unconstitutional because it required minor to file medical malpractice suit before 14th birthday). The clear holding of *Weiner* and *Sax* is that the Legislature cannot abridge a minor's right to file suit asserting common law rights before the minor reaches majority.

I would hold the statute of limitations did not begin to run against Michael until he reached his majority. TEX.CIV.PRAC. & REM. CODE § 129.001 (1986); TEX. PROBATE CODE §§ 3(t), 601(15) (1996). Aubrey timely filed suit on Michael's behalf when he sued before Michael's twentieth birthday. If the Legislature cannot purposefully curtail a minor's right to file suit by amendment to the Medi-

---

**2.** Although not an issue in this case, under article 4590i, § 10.01, Aubrey could have filed suit until Michael reached his 20th birthday. *Weiner v. Wasson*, 900 S.W.2d 316, 321 (Tex.1995).

**3.** Act of March 29, 1955, 54th Leg., R.S., ch. 64, 1955 Tex.Gen.Laws 239, 294 (amended 1987, 1989, 1991 & 1993) (current version at TEX.BUS. CORP.ACT art. 7.12 (1996)).

cal Liability Act, the Legislature cannot incidentally curtail a minor's right to file suit by the corporation survival statute.

Because article 7.12 cuts off a minor's cause of action before the minor is legally able to assert it, and there is no adequate substitute remedy available to the minor, I would hold the article unconstitutional as applied to minors. *Battaile v. Yoffe*, 882 S.W.2d 13, 16 (Tex.App.—Houston [1st Dist.] 1994, writ denied) (making the same statement about article 4590i, § 10.01). I would sustain point of error one.

MIRABAL and ANDELL, JJ., join this opinion.

TAFT, Justice, dissenting.

As indicated in Justice Cohen's opinion, I agree with the decision that the corporate survival statute controls. However, I disagree that appellant created a fact issue about whether TWH knew of his claim; therefore, because I would affirm the summary judgment, I respectfully dissent.

Appellant candidly pleaded that he was a "known potential claimant." Justice Cohen's opinion appears to agree that article 6.04 did not require a dissolving corporation to notify known *potential* claimants. Nevertheless, by treating the variance as a pleading problem, Justice Cohen's opinion holds that it was waived by TWH's failure to object or specially except, and by allowing the issue to be tried by consent. If the problem was only a pleading problem, I would agree.

However, I believe the problem here is more serious than a mere pleading problem. Appellant made no showing that he ever made a claim against TWH prior to its dissolution, much less that TWH knew about any such claim. Thus, appellant never raised a fact issue that he was a known claimant. I agree that appellant raised a fact issue that he was a "known potential claimant," but, as Justice Cohen's opinion appears to acknowledge, being a known *potential* claimant is not sufficient to require a dissolving corporation to give one notice.

Accordingly, I would affirm the trial court's judgment. To the decision of a majority of this Court to reverse, I respectfully dissent.