Juan GOMEZ, as Parent and Next Friend of Michael Gomez, a Minor, Appellant,

v.

PASADENA HEALTH CARE MANAGEMENT, INC. and Southmore Medical Center, Ltd., Appellees.

Nos. 14–06–00605–CV, 14–06–00957–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 17, 2008.

Robert J. Talaska, Timothy Lyle Culberson, Houston, for appellant in 14-06-00605-CV.

Robert J. Talaska, James W. K. Wilde, Houston, for appellant in 14-06-00957-CV.

James Wilson Key Wilde, Richard A. Sheehy, Houston, for appellees.

Panel consists of Justices YATES, FOWLER, and GUZMAN.

## OPINION

WANDA McKEE FOWLER, Justice.

Appellant, Juan Gomez ("Gomez"), appeals from two orders of the trial court granting summary judgment in favor of appellees, Pasadena Health Care Management, Inc. and Southmore Medical Center, Ltd. On appeal, Gomez raises three issues: (1) whether application of the three-year survival provision of Texas Business Corporation Act Article 7.12 to a minor's health care liability claim violates the Open Courts Provision of the Texas Constitution; (2) whether section 10.01 of the Medical Liability and Insurance Improvement Act, rather than Article 7.12, provides the statute of limitations applicable to health care liability claims brought on behalf of a minor against a dissolved corporation; and (3) whether Gomez's son, Michael, was a "known claimant" for the purposes of Texas Business Corporation Act Article 6.04. Finding no error in the trial court's judgment, we affirm.

## Factual and Procedural Background

On June 5, 1993, Michael Gomez was born at Southmore Medical Center, a facility then owned and operated by Southmore Medical Center, Ltd. ("Southmore"). Complications in Michael's delivery required doctors to deliver him by cesarean section when an attempted vacuum extraction delivery failed. When Michael was two days old, and again when he was twelve months old, he experienced febrile seizures, and was taken to Texas Children's Hospital, where the attending physician noted that a perinatal injury was likely responsible for Michael's condition.

At the time of Michael's birth, Southmore was a limited partnership comprised of one general partner, Pasadena Health Care Management, Inc. ("Pasadena"), and three limited partners, Touchstone Healthcare Management, Inc. ("Touchstone"), and two individuals. In June 1996, Southmore sold Southmore Medical Center to Memorial Hospital System. As part of the purchase agreement, Southmore procured a tail insurance policy and completed a "Risk Management Summary," a list of all persons thought to have potential claims against Southmore and/or its constituent partners. Neither Michael Gomez nor his parents, Juan and Rose Gomez, were on this list of potential claimants.

On December 24, 1996, Pasadena dissolved. Neither Southmore nor Pasadena provided notice of Pasadena's intent to dissolve to Michael or his parents. In July 1998, Pasadena completed the winding-up of its business affairs, and thereafter both Pasadena and Southmore ceased all operations. Over five years later, on August 29, 2003, Gomez, Michael's father, filed suit, alleging a cause of action for medical negligence against Dr. James P. Hernon, Dr. John Devine, Pasadena, Southmore, and Touchstone.[1] Gomez alleged that Drs. Hernon and Devine were negligent in their failure to appropriately manage Rose's gestational diabetes during her prenatal care, as well as in their inappropriate use of a vacuum extractor, and in their failure to timely perform a cesarean section. Gomez further alleged that Pasadena and Southmore, through their agents, representatives, and/or employees, were negligent in their failure to properly interpret the fetal monitoring strip, as well as in their failure to perform essential interventions in light of the data shown on the strip. Later, Gomez amended his petition to assert this latter cause of action against Michelle Meyer, R.N., in her individual capacity.

Pasadena and Southmore filed a combined motion for summary judgment, which the trial court denied. In their motion, Pasadena and Southmore argued that the three-year survival provision of Texas Business Corporation Act Article 7.12 extinguished Gomez's claim against Pasadena as of the expiration of the three-year period following Pasadena's dissolution. Pasadena and Southmore further contended that, because its sole general partner had itself been dissolved, Southmore was no longer a viable legal entity capable of being sued.

Sometime later, Pasadena filed its own motion for summary judgment, which the trial court granted. In its motion, Pasadena reasserted that its dissolution triggered a three-year survival period which had expired prior to the filing of Gomez's claims, and further contended that Gomez was not a known claimant of Pasadena prior to its dissolution. Southmore fol-

---

1. On September 9, 2005, Gomez non-suited Touchstone Health Care Management, Inc. without prejudice.

lowed with its own motion for summary judgment, which the trial court also granted. Southmore premised its motion on the trial court's grant of Pasadena's motion for summary judgment and dismissal from the case, reasserting that Pasadena's dissolution effected Southmore's own dissolution, and that Southmore was no longer a viable legal entity capable of being sued. The trial court granted Gomez's motion for severance of his claims against appellees,[2] and this appeal followed.

### Issues on Appeal

Here, Gomez appeals the two orders of the trial court granting summary judgment in favor of Pasadena and Southmore, respectively. In his first issue, Gomez contends that application of the three-year survival provision of Texas Business Corporation Act Article 7.12 to a minor's health care liability claim violates the Open Courts Provision of the Texas Constitution. In his second issue, Gomez asserts that section 10.01 of the Medical Liability and Insurance Improvement Act, rather than Article 7.12, provides the statute of limitations applicable to health care liability claims brought on behalf of a minor against a dissolved corporation. In his third issue, Gomez argues that Michael was a "known claimant" for the purposes of Texas Business Corporation Act Article 6.04, and that appellees' failure to comply with the notice requirements of that provision should preclude them from receiving the benefit of the three-year survival provision of Article 7.12. We address Gomez's issues in the order he has presented them.

### Standard of Review

■ We review the trial court's grant of summary judgment de novo. *Joe v. Two*

*Thirty Nine Joint Venture,* 145 S.W.3d 150, 156–57 (Tex.2004). To prevail on a motion for summary judgment, the movant must show that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Tex.R. Civ. P. 116a(c); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex.1985); *Aguirre v. Vasquez,* 225 S.W.3d 744, 750 (Tex.App.-Houston [14th Dist.] 2007, no pet.). A defendant moving for summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997); *Shirvanian v. DeFrates,* 161 S.W.3d 102, 106 (Tex. App.-Houston [14th Dist.] 2004, pet. denied). When reviewing a traditional summary judgment, we take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Joe,* 145 S.W.3d at 157; *Aguirre,* 225 S.W.3d at 750.

### Analysis

### I. No Open Courts violation.

■ The first issue in this appeal is whether application of the three-year survival provision of Texas Business Corporation Act Article 7.12 to a minor's health care liability claim violates the Open Courts Provision of the Texas Constitution. Gomez contends that Article 7.12 effectively cuts off a minor's cause of action against a dissolved corporation before he is legally able to assert it, in direct violation of Article I, sections 13 and 19 of the Texas Constitution.[3] Gomez asserts

---

2. Gomez's claims against Hernon, Devine, and Meyer remain at the trial court level, and are not the subject of this appeal.

3. Specifically, Gomez contends that "Article 7.12 is unconstitutional when applied to minors because it denies them their rights to due process and equal protection under Arti-

that Michael has a well-recognized cause of action for medical negligence at common law, and argues that the legislature has failed to provide ·an adequate substitute remedy for minors with claims against dissolved hospital corporations. Gomez therefore urges this Court to find a reasonable exception to Article 7.12 as applied to minor claimants.[4]

■ As a preliminary matter, we must begin with the presumption that a statute is constitutional. *Enron Corp. v. Spring Indep. Sch. Dist.*, 922 S.W.2d 931, 934 (Tex.1996); *Andress v. MacGregor Med. Ass'n, P.A.*, 5 S.W.3d 855, 858 (Tex. App.-Houston [14th Dist.] 1999, no pet.). The party challenging the constitutionality of a statute bears the burden of demonstrating that the enactment fails to meet constitutional requirements. *Enron Corp.*, 922 S.W.2d at 934; *Andress*, 5 S.W.3d at 858.

**A. Courts use a two-pronged test to determine whether the Open Courts Provision has been violated.**

■ Article I, section 13 of the Texas Constitution provides that "[a]ll courts shall be open, and every person for an injury done him, in his lands, goods, person, or reputation, shall have remedy by due course of law." Tex. Const. art. I, § 13. This clause, sometimes referred to as the "Open Courts Provision," acts as an additional due process guarantee granted in the Texas Constitution, and prohibits the legislature from arbitrarily withdrawing all legal remedies from anyone having a well-defined cause of action under the common law. *See Sax v. Votteler*, 648 S.W.2d 661, 664–65 (Tex.1983); *Andress*, 5 S.W.3d at 858–59.

■ Among its constitutional guarantees, the Open Courts Provision provides that "the legislature may not abrogate the right to assert a well-established common law cause of action unless the reason for its action outweighs the litigants' constitutional right of redress." *Trinity River Auth. v. URS Consultants, Inc.*, 889 S.W.2d 259, 261 (Tex.1994); *Andress*, 5 S.W.3d at 859. To establish an Open Courts violation in this context, Gomez must show (1) he has a well-recognized common law cause of action that is being restricted; and (2) the restriction is unreasonable or arbitrary when balanced against the purpose and basis of the statute. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 355 (Tex.1990) (citing *Sax*, 648 S.W.2d at 666); *Andress*, 5 S.W.3d at 859. Under the second prong of the test, the court must determine the restrictiveness of the statute and whether the legislature avoided an unconstitutional result by leaving a reasonable alternative remedy.

cle I, Sections 13 and 19 of the Texas Constitution." However, wholly absent from Gomez's brief is any explanation, argument, or analysis regarding equal protection or Article I, section 19 of the Texas Constitution. Therefore, Gomez has waived these arguments for failure to adequately brief the issues, and we need not consider them here. Tex.R.App. P. 38.1(h); *see Vickery v. Vickery*, 999 S.W.2d 342, 352–53 (Tex.1999) (concluding that appellant waived issues on appeal for failure to support her assertions with explanation or argument); *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex.App.-Houston [14th Dist.] 2005, no pet.).

4. Gomez also argues that this Court's application of Article 7.12 will further allow "healthcare corporations to dissolve after negligently injuring minor patients and dispense with all assets that could have been subject to the minor's claim before the minor reaches majority[.]" But, Article 6.08 of the Texas Business Corporation Act provides a mechanism by which the court can order the revocation of dissolution of a corporation upon a finding of actual or constructive fraud. *See* Tex. Bus. Corp. Act art. 6.08. This provision allows the court to prevent healthcare corporations from taking fraudulent actions.

*Adams v. Aetna Life Ins. Co.*, No. B14–93–00596–CV, 1994 WL 668198, at *2 (Tex. App.-Houston [14th Dist.] Dec. 1, 1994, writ denied) (not designated for publication) (citing *Liggett v. Blocher*, 849 S.W.2d 846, 851 (Tex.App.-Houston [1st Dist.] 1993, no writ)). An otherwise overly restrictive statute may be constitutional if there is "any adequate substitute to obtain redress." *Id.* (quoting *Sax*, 648 S.W.2d at 667).

**B. This case does not meet the first prong requiring a well-recognized cause of action in common law.**

 There is no dispute that a suit for medical negligence is recognized in common law. *Andress*, 5 S.W.3d at 859. Likewise, minors have a well-defined common law cause of action to sue for injuries negligently inflicted by others. *Sax*, 648 S.W.2d at 666. However, at common law, the legal existence of a corporation was terminated upon dissolution. *Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547, 549 (Tex.1981); *Martin v. Tex. Woman's Hosp.*, 930 S.W.2d 717, 720 (Tex.App.-Houston [1st Dist.] 1996, no writ) (en banc). Once dissolved, the corporation could neither sue nor be sued, and all legal proceedings in which it was a party abated. *Hunter*, 620 S.W.2d at 549–50.

To alleviate the harsh effects of the common law on creditors, an equitable doctrine evolved. *Id.* at 550. This doctrine, often referred to as the "trust fund theory," provided that when the assets of a dissolved corporation were distributed among its shareholders, a creditor of the dissolved corporation could pursue the assets on the theory that, in equity, they were burdened with a lien in his favor. *Id.* (citing *Koch v. United States*, 138 F.2d 850, 852 (10th Cir.1943)); *Martin*, 930 S.W.2d at 720. The equitable doctrine actually had a much broader application; the trust fund theory applied whenever the assets of a dissolved corporation were held by any third party, including corporate officers and directors, so long as the assets were traceable and had not been acquired by a bona fide purchaser. *Id.*

The Texas legislature ultimately codified the trust fund theory in Article 7.12. *Hunter*, 620 S.W.2d at 550; *Martin*, 930 S.W.2d at 720. Under Article 7.12, creditors were not given unlimited access to the dissolved corporation's assets; rather, the period of time during which a corporation could be sued was limited to three years from the date of dissolution. Tex. Bus. Corp. Act art. 7.12(C).

Prior to the enactment of Article 7.12, Texas courts had long applied the trust fund theory to dissolved corporations, but only as it was embodied within the general framework of certain remedial statutes. *Hunter*, 620 S.W.2d at 550. The effect of these statutes was to supplant the equitable trust fund theory by creating a statutory equivalent. *Id.* According to the Texas Supreme Court, "[i]n Texas, recognition of the trust fund theory, as applied to dissolved corporations, did not exist apart from these statutes." *Id.* Furthermore, in Texas, suits against a dissolved corporation are permitted only by statute. *Id.* at 551 (holding that Article 7.12 bars resort to the trust fund theory as it exists apart from the statute); *Anderson v. Hodge Boats & Motors, Inc.*, 814 S.W.2d 894, 896 (Tex.App.-Beaumont 1991, writ denied) ("Article 7.12 ... provides [the] exclusive means whereby an injured party may assert a claim after the dissolved corporation has ceased to exist for other purposes.").

 Thus, a suit against a dissolved corporation is purely a statutory claim. *Martin*, 930 S.W.2d at 720; *see also Hunter*, 620 S.W.2d at 550–51. Because Michael has no common law right to sue a dissolved corporation, Gomez cannot estab-

lish an Open Courts violation. *See Bala v. Maxwell,* 909 S.W.2d 889, 893 (Tex.1995); *Moreno,* 787 S.W.2d at 355; *Andress,* 5 S.W.3d at 859.

However, even if we were to hold that, under the facts of the present case, Michael has a well-established common law cause of action for medical negligence against Pasadena and Southmore, we would still conclude that Gomez cannot establish an Open Courts violation. With respect to the second prong of the *Sax* test, we cannot conclude that Article 7.12 is unreasonable or arbitrary when balanced against the purpose and nature of the statute. As appellees correctly note, Texas common law did not provide for a cause of action against a dissolved corporation. *See Hunter,* 620 S.W.2d at 550. The enactment of Article 7.12 and its predecessors allowed such claims to be brought, but with reasonable limitations. *See id.; Martin,* 930 S.W.2d at 721. As the court in *Martin* noted:

> The survival statute provides benefits for both the claimant and for the dissolved corporation. The claimant is allowed to sue a dissolved corporation for three years after its dissolution, which he could not do at common law. The corporation's benefit is that its potential liability is not unlimited, but is terminated in three years. In order to enjoy these respective benefits, both the claimant and the corporation must meet certain requirements. The claimant must sue within three years of the dissolution, and the corporation must have given notice of its dissolution to all known claimants, under Texas Business Corporation Act, article 6.04.

*Martin,* 930 S.W.2d at 721. The Texas Supreme Court has stated that the purpose and basis of Article 7.12 was to (1) allow claimants to sue a dissolved corporation for pre-dissolution activity for three years after its dissolution; and (2) protect shareholders, officers, and directors of a dissolved corporation from prolonged and uncertain liability. *See Hunter,* 620 S.W.2d at 550–51; *Martin,* 930 S.W.2d at 721. Article 7.12 is not an unreasonable and arbitrary means to achieve this purpose. Moreover, on these facts, Michael's right to redress has not effectively been abrogated. Michael has a reasonable alternative remedy: a cause of action against Hernon, Devine, and Meyer. Because an alternative remedy is available, Gomez cannot satisfy the second prong of the *Sax* test, and thus cannot establish an Open Courts violation. *See Adams,* 1994 WL 668198, at *2 (finding no Open Courts violation when the minor children at issue still had a cause of action against their father; on those facts, "[t]he legislature ha[d] not unreasonably or arbitrarily interfered with a common law cause of action or barred access to the courts"); *see also Nelson v. Metallic–Braden Bldg. Co.,* 695 S.W.2d 213, 215 (Tex.App.-Houston [1st Dist.] 1985, writ ref'd n.r.e.) (finding no Open Courts violation when the appellant did not establish that he was effectively denied a cause of action for his injuries, and concluding that, in light of the holding in *Sax,* viable claims for damages against the other named defendants constituted a reasonable alternative such that the legislature "ha[d] not abrogated his right to redress for his injuries").

We therefore overrule Gomez's first issue.

## II. Section 10.01 of the Medical Liability and Insurance Improvement Act does not trump the three-year survival provision of Article 7.12.

The next issue in this appeal is whether the statute of limitations of section 10.01 of the Medical Liability and Insurance Im-

provement Act ("Medical Liability Act")[5] or the three-year survival provision of Article 7.12, applies to Gomez's suit. Gomez contends that, in this case, Article 7.12 conflicts with the provisions of the Medical Liability Act as construed by the Texas Supreme Court and with the Court's holding in *Bala v. Maxwell,* and therefore the three-year survival provision of Article 7.12 should not be applied to Michael's claims against Pasadena and Southmore. We disagree.

**A. The Medical Liability Act is a tolling statute that allows a minor to sue for acts of medical negligence committed during his minority until two years after attaining the age of majority.**

 The Medical Liability Act, Texas Revised Civil Statutes, Article 4590i, section 10.01, provided that health care liability claims on behalf of minors must be filed no later than the minor's fourteenth birthday. Act of May 30, 1977, 65th Leg., R.S., ch. 817, 1977 Tex. Gen. Laws 2039, 2052 (amended 1993 and 1995), *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884 (hereinafter Medical Liability Act § 10.01). Specifically, section 10.01 of the Act states:

> Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date of the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed; *provided that minors under the age of 12 years shall have until their 14th birthday in which to file, or have filed on their behalf, the claim.*

*Id.* (emphasis added). Gomez correctly notes that in *Weiner v. Wasson,* the Texas Supreme Court held that section 10.01 is unconstitutional as applied to minors. Instead, the Court concluded that, under the general tolling and limitations provisions of Civil Practices and Remedies Code sections 16.001 and 16.003, a minor has until two years after attaining the age of majority to file suit for acts of medical malpractice committed during his or her minority. *Weiner v. Wasson,* 900 S.W.2d 316, 321 (Tex.1995). It is undisputed that Gomez's claim was filed before Michael's twentieth birthday, and is therefore timely if the Medical Liability Act controls. Of significance here, the Medical Liability Act is a tolling statute that tolls the tort statute of limitations for a specific amount of time.

**B. Because Article 7.12 is a survival statute, and not a statute of limitations, its provisions govern this appeal.**

 However, Article 7.12 is a survival statute, not a statute of limitations. *See Hunter,* 620 S.W.2d at 549; *Martin,* 930 S.W.2d at 720. The distinction between a statute of limitations and a survival statute is that, "a statute of limitations affects the time that a stale claim may be brought while a survival statute gives life for a limited time to a right or claim that would have been destroyed entirely but for the statute." *Martin,* 930 S.W.2d at 720 (quoting *Davis v. St. Paul Fire & Marine Ins. Co.,* 727 F.Supp. 549, 551 (D.S.D. 1989)). Article 7.12, a survival statute, "arbitrarily extend[s] the life of the corporation to allow remedies connected with the corporation's existence to be asserted."

---

**5.** The Medical Liability Act, Texas Revised Civil Statutes, Article 4590i, C 10.01, governs this case because it was filed before September 1, 2003. *See Mills v. Pate,* 225 S.W.3d 277, 284 (Tex.App.-El Paso 2006, no pet.).

Effective September 1, 2003, the Legislature repealed the Medical Liability Act and replaced it with Chapter 74 of the Civil Practices and Remedies Code. *Id.* at n. 2.

*See id.* (quoting *Davis,* 727 F.Supp. at 551). Thus, a survival statute creates a right or claim that would not exist apart from the statute. *Id.* (citing *M.S. v. Dinkytown Day Care Ctr., Inc.,* 485 N.W.2d 587, 589 (S.D.1992)); *see Anderson,* 814 S.W.2d at 896. And, the general rule is that when a cause of action and a remedy for its enforcement are derived from a statute rather than the common law, the statutory provisions are "mandatory and exclusive, and must be complied with in all respects or the action is not maintainable." *Dubai Petroleum Co. v. Kazi,* 12 S.W.3d 71, 76 (Tex.2000).

■■■ These distinctions between a statute of limitations and a survival statute govern the outcome here. When a plaintiff fails to sue within the period provided by a statute of limitations, the claim still exists, but, unless the statute of limitations affirmative defense is waived, it can no longer be brought by that plaintiff. *Martin,* 930 S.W.2d at 721. Conversely, if a party fails to sue within the time limits of the survival statute, there is no longer an entity that can be sued. *Id.*

Under Article 7.12, Gomez was required to file suit on behalf of Michael within three years of Pasadena's dissolution, or the claim would thereafter be extinguished.[6] TEX. BUS. CORP. ACT art. 7.12. Gomez concedes he did not file suit against Pasadena until August 29, 2003, nearly seven years after Pasadena's dissolution. After its dissolution and passage of the three-year period, a corporation cannot be sued because it no longer exists and the law provides no further remedy against it. *See Martin,* 930 S.W.2d at 721; *Pellow v. Cade,* 990 S.W.2d 307, 313 (Tex.App.-Texarkana 1999, no pet.). A statute of limitations, which only extends the time in which an entity can be sued, does not, and cannot, act to change this result and to revive an entity that no longer exists and which the law no longer allows to be sued. *See Martin,* 930 S.W.2d at 721; *Pellow,* 990 S.W.2d at 313. That is not the function of a statute of limitations.

Therefore, Article 7.12 prevails over the statute of limitations contained in the Medical Liability Act. Because Gomez failed to file Michael's claims against Pasadena within three years of Pasadena's dissolution, those claims are extinguished. We overrule Gomez's second issue.

### III. Michael was a not a "known claimant" for the purposes of Article 6.04.

■■■ The final issue in this appeal is whether Michael was a "known claimant" for the purposes of Texas Business Corporation Act Article 6.04. Gomez contends that, prior to Pasadena's dissolution, Michael was a known claimant of Pasadena and Southmore, neither of which notified him of Pasadena's intent to dissolve as required by Article 6.04. Gomez asserts that the evidence demonstrating that Michael was a known claimant is more substantial than that held sufficient to create a fact issue in *Martin,* and argues that

---

**6.** Appellant argues that this result is inconsistent with the holding of the Texas Supreme Court in *Bala v. Maxwell.* In that case, the Court held that the phrase "notwithstanding any other law," included in section 10.01, unequivocally expressed the legislature's intent that the provisions of section 10.01 govern when its time limitation provisions conflict with another law. *Bala,* 909 S.W.2d at 892–93. However, the Court later clarified that the language "any other law" is triggered only when the statute or rule at issue purports to either commence, toll, or extend limitations. *See Chilkewitz v. Hyson,* 22 S.W.3d 825, 830 (Tex.1999). To the extent that Article 7.12 is a survival statute, and not a statute of limitations, its application is unaffected by the "notwithstanding any other law" language of section 10.01.

neither Pasadena nor Southmore should get the benefit of the three-year survival provision of Article 7.12 because they did not comply with the notice requirements of Article 6.04. We disagree.

■ Gomez correctly notes that a business receives the benefit of Article 7.12 only if it complies with the notice provisions of Article 6.04(A)(2). *Martin*, 930 S.W.2d at 721. That provision requires a corporation to "cause written notice by registered or certified mail of its intention to dissolve to be mailed to each known claimant against the corporation" before filing articles of dissolution. TEX. BUS. CORP. ACT art. 6.04(A)(2). Neither Pasadena nor Southmore informed Michael of Pasadena's intention to dissolve. Thus, if Michael was a known claimant, then the three-year survival provision of Article 7.12 would not operate to extinguish his claims against Pasadena. *Martin*, 930 S.W.2d at 721. Conversely, if Michael was an unknown claimant, Pasadena did not have to notify him, and he cannot now sue Pasadena. *Id.*

We hold that Michael was not a known claimant of Pasadena prior to its dissolution, and therefore neither Pasadena nor Southmore were obligated to provide him with the requisite statutory notice. As the movant for summary judgment, Pasadena was required to conclusively establish each element of its affirmative defense. *Sci. Spectrum, Inc.*, 941 S.W.2d at 911; *Shirvanian*, 161 S.W.3d at 106. This entailed

proof that Michael Gomez was not a known claimant of Pasadena prior to its dissolution. *See D.B. & M. Co. v. Nat'l Chrome Plating Co.*, 975 S.W.2d 324, 326–27 (Tex. App.-Dallas 1994, writ denied) (holding that it is the movant/corporation's burden to establish that it complied with the notice provisions of Article 6.04(A)(2)). Pasadena met its burden on summary judgment.

In addition to the affidavit and deposition testimony of Christian C. Rice, Jr., the president of Pasadena prior to its dissolution, in which Rice stated that Pasadena did not know of Michael's claims, Pasadena attached to its motion for summary judgment a "Risk Management Summary," a list of all persons thought to have potential claims against Southmore and/or its constituent partners. Neither Michael nor his parents are listed. Although the Risk Management Summary was apparently created for the sale of Southmore Medical Center, and was compiled over six months prior to Pasadena's dissolution, Gomez fails to rebut Pasadena's contention that it did not consider Michael a potential claimant, much less a known claimant, before its dissolution. Moreover, contrary to Gomez's assertion, the fact that the Risk Management Summary encompassed "every known claim of every known incident of everything that anybody even thought could possibly happen" further buttresses Pasadena's argument that Michael was not a known claimant for the purposes of Article 6.04(A)(2). Furthermore, in stark contrast to the situation in *Martin*,[7] Gomez

---

7. In *Martin*, the appellant similarly argued that there was a fact issue as to whether his son was a "known claimant" of Texas Women's Hospital ("TWH") for the purposes of Article 6.04. *Martin*, 930 S.W.2d at 721. However, in that case, there was circumstantial evidence that TWH knew of the son's claim, even though a lawsuit had not been filed within the three-year period following TWH's dissolution: (1) TWH's insurance company increased TWH's policy limits, at

TWH's request, from $300,000 to $750,000 twenty days after the son's birth; (2) TWH's insurance company backdated that increase to take effect on the very day of the son's birth; and (3) TWH sold its assets nearly nine months later for $750,000, the exact amount of the increased insurance limits. *Id.* at 721–22. The court of appeals held that this evidence created a fact issue about whether the son was a "known claimant" of TWH. *Id.* at 721. Granting the appellant all reasonable

provides no evidence, circumstantial or otherwise, to rebut Pasadena's contention that neither Pasadena nor Southmore knew of Michael's claims prior to Pasadena's dissolution. Gomez made no showing that he ever made a claim against Pasadena before its dissolution, much less that Pasadena or Southmore knew about any potential claim that he would later make. In fact, Gomez's only argument concerning appellees' knowledge of Michael's claim is grounded in their possession of the medical records pertaining to Rose and the birth of Michael. Whatever the import of appellees' possession of these medical records, being a known *potential* claimant is not sufficient to trigger the notice requirements of Article 6.04(A)(2).[8] *Martin,* 930 S.W.2d at 722 n. 7 (noting that Article 6.04 does not mention "potential" claimants, and finding no support in Texas jurisprudence for the proposition that a dissolving corporation must notify "potential" claimants).

Accordingly, there is no genuine issue of material fact regarding whether Michael was a known claimant of Pasadena prior to its dissolution. We therefore overrule Gomez's final issue.

### Conclusion

Having addressed and overruled each of Gomez's issues, we affirm the trial court's judgment.

---

inferences from the facts, the court concluded that the evidence suggested (1) TWH moved quickly after the son's birth to increase its policy limits, and backdate them to the date of his birth, because they knew a significant claim would be made; and (2) the $750,000 figure was selected because the shareholders were willing to sell TWH's assets for that amount, as they later did, and wanted assurance that at least that much of the proceeds would be protected from medical malpractice plaintiffs, including the son. *Id.* at 722. Here, Gomez offers no such circumstantial evidence suggesting that appellees knew that any claim would be made by Michael. Moreover, Gomez has failed to cite, and we have not found, any Texas cases that support his contention that a healthcare corporation's mere possession of medical records, without more, can give rise to a fact issue sufficient to defeat summary judgment on whether a party is a "known claimant" of that corporation, for the purposes of Article 6.04(A)(2).

8. In fact, five of the eight justices sitting *en banc* to hear the *Martin* case agreed that being a known potential claimant is insufficient to trigger the notice requirements of Article 6.04(A)(2). *Id.* at 722, 724. The three remaining justices agreed with the majority that the case should be reversed due to TWH's failure to satisfy its burden on summary judgment. *Id.* at 723. The majority and dissenting opinions in *Martin* stated that if the statutory phrase "known claimant against the corporation" really means "*known potential* claimant against the corporation," almost any former medical patient would be entitled to notice of corporate dissolution. *Id.* at 722 n. 7.